KORNBLUM · COCHRAN

# KCEH

ERICKSON · HARBISON

Kornblum·Cochran·Erickson·Harbison, LLP, A Partnership of Professional Corporations and an Individual

GUY O. KORNBLUM (SBN 39974)
WALTER G. CRUMP (SBN 203743)
NICHOLAS J. PETERSON (SBN 287902)
KORNBLUM, COCHRAN,
ERICKSON & HARBISON, LLP
1388 Sutter St., Suite 820
San Francisco, CA 94109
Telephone: (415) 440-7800
Facsimile:  (415) 440-7898

GEORGINA R. DUGGS, Individually and
as Trustee of the EDWARD & GEORGINA
DUGGS LIVING TRUST; ZANE DUGGS
and GEMMA DUGGS, minors, by
GEORGINA R. DUGGS, their natural guardian

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO

| | |
|---|---|
| GEORGINA R. DUGGS, Individually and as Trustee of the EDWARD & GEORGINA DUGGS LIVING TRUST; ZANE DUGGS and GEMMA DUGGS, minors, by GEORGINA R. DUGGS, their natural guardian,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES EARL EBY,<br><br>Defendant. | Case No.: 3:14-cv-03734<br><br>**COMPLAINT FOR:**<br><br>**(1) Declaratory Relief;**<br>**(2) Statutory Fraud and Common Law Fraud;**<br>**(3) Financial Abuse of a Dependent Adult [Welf. & Inst. Code §15600 et seq];**<br>**(4) Breach of Fiduciary Duty;**<br>**(5) Rescission;**<br>**(6) Unfair Competition [Bus. & Prof. Code §17200 et seq]]; and**<br>**(7) Constructive Trust.**<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW, Plaintiffs GEORGINA R. DUGGS, Individually, as Trustee of the

EDWARD & GEORGINA DUGGS LIVING TRUST, and as the natural guardian of ZANE

DUGGS and GEMMA DUGGS, minors, and files this Complaint, and in doing so, allege the

following:

## I.   THE PARTIES

1.     Plaintiff GEORGINA R. DUGGS ("GEORGINA") is an individual who currently resides in the City of Omaha, County of Douglas, State of Nebraska, and is the widow of Edward L. Duggs ("Decedent").  Plaintiff GEORGINIA, as well as Decedent, also lived in California for part of the time relevant to this action.

2.     At all times herein relevant, the EDWARD & GEORGINA LIVING TRUST ("the TRUST") was and is a trust established under the laws of California, and has its situs in the State of California.  GEORGINA is the Trustee of said TRUST and brings this action in her capacity as such as a co-Plaintiff.  The beneficiaries of the TRUST are the two minor children of Decedent and Plaintiff GEORGINA.

3.     Plaintiff ZANE DUGGS ("ZANE") is an individual who currently resides in the City of Omaha, County of Douglas, State of Nebraska, and is the minor son of Decedent and GEORGINA.  Plaintiff ZANE also lived in California for part of the time relevant to this action.

4.     Plaintiff GEMMA DUGGS ("GEMMA") is an individual who currently resides in the City of Omaha, County of Douglas, State of Nebraska, and is the minor daughter of Decedent and GEORGINA.  Plaintiff GEMMA also lived in California for part of the time relevant to this action.

5.     At all times herein relevant, Defendant JAMES EARL EBY ("EBY"), on information and belief, is an individual who currently resides at 1963 Elden Drive, in the City of San Jose, County of Santa Clara, State of California.

## II.   JURISDICTION AND VENUE

6.     This Court has jurisdiction in that the citizenship of all Plaintiffs is diverse from that of Defendant, and the amount in controversy, without interests and costs, exceeds the sum of $75,000, the value stated in 28 U.S.C. section 1332.  Plaintiffs GEORGINA, ZANE and GEMMA are all citizens of Nebraska.  Defendant EBY is a citizen of California.

7.     Venue is appropriate pursuant to 28 U.S.C. section 1391 because a substantial part of the events giving rise to the claim occurred in this District.

///

III.    **NATURE OF THE ACTION**

8.    This action is a complaint seeking remedies of declaratory relief, damages, treble damages, punitive damages, attorneys' fees and costs brought by Plaintiff GEORGINA on behalf of herself, the TRUST and as the natural guardian of her two minor children, ZANE and GEMMA, and is based on the wrongdoing and wrongful conduct of Defendant EBY as alleged herein.

9.    Essentially, Plaintiffs claims are based on Defendant EBY's wrongdoing in arranging a "sale" of a MetLife Investors USA Insurance Company life insurance policy No. 210 227 420 USU ("the Policy") with Decedent on the life of Decedent, with a principal sum of $1.5 Million in death benefit coverage to Defendant EBY who, in return for a promise to pay to Decedent certain sums of money over time, attempted to become the owner of the Policy while Decedent was still alive.  Defendant EBY then arranged to change the beneficiary of the Policy to himself from the TRUST, which was then the beneficiary, so that once Decedent died, which occurred on December 8, 2013, Defendant EBY would receive the full death benefit proceeds of the Policy, thus depriving the TRUST of this sum.  This sale arranged for by Defendant EBY was contrary to law, was fraudulent and wrongful.  By this action Plaintiffs seek, *inter alia*, to set aside and void the "sale" of the Policy, to rescind the transaction and to recover the proceeds of the Policy to the TRUST, the rightful beneficiary of the Policy, so that the proceeds may go to GEORGINA, ZANE and GEMMA, who are the beneficiaries of the TRUST, as alleged herein.  Plaintiffs also seek a constructive trust over the proceeds of the life insurance policy fraudulently and illegally received by Defendant EBY for the benefit of the TRUST, the rightful beneficiary of the Policy.

10.    The purported "sale" of a life insurance policy by an owner is sometimes described as a "life settlement."  This is defined as the sale of a life insurance policy in which a policy owner receives a cash settlement for his/her policy by selling it to an "investor."  The responsibility for premiums and ownership of the policy is transferred to the "investor."  This life settlement marketplace is heavily regulated by statute in the State of California, where this life settlement between Decedent and Defendant EBY took place, which must be strictly complied with in order to be valid.  California Insurance Code §§10113.1 through 10113.3 dictates the manner in which life settlements may be bought or sold in California, and apply to all life settlement transactions made on

1   or after July 2, 2010.

2   11.   In the case at hand, the purported "sale" was not in compliance with the law.  In order

3   to have a valid "sale" of a life insurance policy, the then owner must do so through a regulated

4   "secondary market" where licensed agents are allowed to enter into such transactions under allowed

5   circumstances.  The "sale" that is the subject of this Complaint was not processed through a valid

6   "secondary market," and thus was improper and illegal.

7   12.   Furthermore, as alleged herein, Defendant EBY knew that at the time of the sale

8   Decedent was suffering from a severe mental illness/condition and was not competent to enter into

9   this transaction, and was, thus, unduly influenced by Defendant EBY to enter into such.

10   **IV.   GENERAL ALLEGATIONS**

11   13.   In April of 1997, Decedent underwent surgery to remove a brain tumor resulting from

12   cancer in his right front lobe, and had the largest possible part of Decedent's brain removed without

13   affecting Decedent's functionality.  Defendant EBY was aware of Decedent's illness/condition and

14   surgery during this time, having been acquainted with and close friends with Decedent for more than

15   twenty (20) years since first meeting in high school.

16   14.   In 2002, Decedent and Plaintiff GEORGINA were married and first resided together

17   in California.

18   15.   On June 20, 2007, Decedent and Plaintiff GEORGINA executed the TRUST as

19   trustors in Monterey, California, making both Decedent and GEORGINA trustees.  The beneficiaries

20   of the TRUST are GEORGINA and her two minor children, ZANE and GEMMA.  Defendant EBY

21   was made successor trustee to the TRUST.  EBY was also made executor of Decedent's estate,

22   power of attorney and health care power of attorney in fact advocate, as well as executor of Plaintiff

23   GEORGINA's estate, power of attorney and health care power of attorney in fact advocate.

24   16.   In approximately July of 2010, Decedent purchased the MetLife Life Insurance

25   Policy with death benefit coverage of $1.5 Million, making the TRUST the beneficiary of the Policy.

26   17.   Also in 2010, Decedent's neurosurgeon confirmed a very diffuse recurrence and

27   progression of cancer in Decedent's brain and diagnosed Decedent with an inoperable brain tumor

28   that had invaded the internal capsule of the right medial thalamus.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY –
*Duggs, et al. v. Eby*- No. 3:14-cv-03734                                    4

18.    In November of 2010, Decedent and Plaintiff GEORGINA moved to Omaha, Nebraska with ZANE and GEMMA for Decedent's cancer treatment and, in approximately February of 2011, Decedent initiated chemotherapy treatment which included daily doses of slow-release morphine.

19.    From 2010 until his death, Decedent's brain tumor worsened and increasingly altered the psychological state of Decedent, causing severe changes in behavior and mood swings. Throughout this time, Decedent confided in Defendant EBY, his long-time acquaintance, about Decedent's terminal condition/illness, his chemotherapy treatments and the severe mental and physical impact the condition/illness and treatment had upon him.

20.    Throughout 2012, Decedent's mental illness/condition continued to worsen. Decedent's mental mood swings, psychological instability and irrational behaviors increased to the point that, in December of 2012, Decedent moved away from his wife and minor children back to California to be near Decedent's brothers and Defendant EBY.

21.    On January 5, 2013, Defendant EBY negotiated and "purchased" the Policy from Decedent in the form of a life settlement transaction ("the Life Settlement"). A true and correct copy of the Life Settlement contract is attached hereto as **EXHIBIT A** and states that Defendant EBY purchased the $1.5 Million Policy for a mere $250,000 (the "Life Settlement Contract"). Defendant EBY then arranged to change the beneficiary of the Policy to himself from the TRUST, which was then the beneficiary, so that once Decedent died (which, as noted, occurred on December 8, 2013), Defendant EBY would receive the death benefit proceeds of the Policy, thus depriving the TRUST of this sum. The entire negotiation, purchase/sale and beneficiary transfer was executed, witnessed by and known only to Defendant EBY and Decedent, alone. Plaintiffs were not made aware of this transaction until immediately before Decedent's death.

22.    At the time of the attempted "sale" of the Policy via the Life Settlement, Defendant EBY made an initial payment of $50,000 directly to Decedent with the remaining amount due at the time of Decedent's death.

23.    On December 8, 2013, Decedent passed away as a result of the cancer that had caused the brain tumor.

24.     Plaintiffs are informed and believe that in January of 2014, MetLife paid out the Policy death benefits of $1.5 Million to Defendant EBY as beneficiary due to the attempted Life Settlement.

25.     On January 30, 2014, Defendant EBY paid the remaining $200,000 by wire transfer to the "Edward Lee Duggs, Jr. Trust," a second trust formed per the express instructions of the Life Settlement that named only ZANE and GEMMA as beneficiaries (the "Second Trust").  This was a second, separate trust set up by Decedent and his executor prior to Decedent's death for the express purpose of receiving the remaining balance owed by EBY under the attempted Life Settlement Contract.  This second payment was made only after Defendant EBY received the death benefit proceeds of the Policy, and was not made in a timely manner as required by the Life Settlement Contract.

## V.     ISSUES WITH EBY'S LIFE SETTLEMENT PURCHASE

### Licensing Requirement for Life Settlements

26.     Pursuant to California Insurance Code §§1631, 10113.1 and 10113.2(b)(1), it is unlawful and a misdemeanor to sell interests in life policies to strangers with terminal illnesses without obtaining the proper license to do so from the State of California.  The applicant for a "Life Settlement Provider" license must submit an Application to become a Life Settlement Provider, form LIC 441-19, and pay an application fee of $3,498.00.  Once the Life Settlement Provider application is completed, the applicant must upload a copy of the application to the Department of Insurance. The Life Settlement Provider Application includes an Applicant Certification which requires the person having authority to bind the provider to certify that they have reviewed §§10113.1 through 10113.3 of the California Insurance Code and §2548.1, et seq. (Life Settlements) of Title 10 of the California Code of Regulations.

27.     Plaintiffs are informed and believe that neither Decedent nor EBY applied for or ever had the required license to sell or purchase any interest in Decedent's Policy and were not a licensed "Life Settlement Provider" at the time of the attempted "sale" of the Policy to Defendant EBY.  This failure was in violation of the law, and was thus an illegal and wrongful act.

28.     Plaintiffs are also informed and believe that no one with a license to sell or purchase

interests in a life settlement was present to broker the agreement for the Life Settlement between Decedent and EBY.  This failure was also in violation of the law, and was thus an illegal and wrongful act.

### Required Form Filings for Life Settlements

29.    Under Insurance Code §10113.2(c), after the life settlement provider has been licensed the licensee of a life settlement must file with the Department of Insurance a copy of all life settlement forms used by the licensee in California.  No licensee may enter into a life settlement unless it has been provided to and approved by the Insurance Commissioner in advance.

30.    Plaintiffs are informed and believe that neither Decedent nor EBY, nor anyone else, ever submitted a copy of a life settlement application to the California Department of Insurance for approval of the application form or the attempted "sale" of the Policy as required by law.

### Required Licensee Disclosures for Life Settlements

31.    Under Insurance Code §10113.2(d), all life settlement licensees shall be required to disclose or advise any applicant for a life settlement, at the time of solicitation for the life settlement, of all of the following in writing in at least 12-point font and signed by the owner of the life insurance policy:

    a.   Possible alternatives to life settlements for persons with catastrophic or life-threatening illness, including, but not limited to, accelerated befits options that may be offered by the life insurer;

    b.   Tax consequences that may result from entering into a life settlement;

    c.   Consequences for interruption of public assistance as provided by information provided by the State Department of Health Services and the State Department of Social Services under the California Welfare and Institutions Code §11022;

    d.   That the proceeds from a life settlement could be subject to the claims of creditors;

    e.   Other rights or benefits, including conversion rights and waiver of premium benefits that may exist under the policy, could to be forfeited by the owner in a life settlement;

    f.   That a change in ownership of the settled policy could limit the insured's ability to purchase insurance in the future on the insured's life because there is a limit to how

much coverage insurers will issue on one life;

g. That the owner has a right to rescind a life settlement contract within thirty (30) days of the date it is executed by all parties and that the owner has received all required disclosures, or with fifteen (15) days from receipt by the owner of the proceeds of the settlement, whichever is sooner;

h. Any affiliations or contractual relations between the provider and the broker, and the affiliation, if any, between the provider and the issuer of the policy to be settled;

i. That a broker exclusively represents the owner, and not the insurer or the provider or any other person, and owes a fiduciary duty to the owner, including a duty to act according to the owner's instructions and in the best interest of the owner; and

j. The name, business address, and telephone number of the broker.

32.     Plaintiffs are informed and believe that Defendant EBY never made any of any of these above-named disclosures required by state law prior to the attempted "sale" of the Policy.

**Required Broker Disclosures for Life Settlements**

33.     Under Insurance Code §10113.2(f), the life settlement broker must also provide the owner of the life insurance policy with specified written disclosures before execution of a life settlement contract.  These disclosures must be clearly displayed in the contract or in a separate document signed by the owner, and include:

a. The name, business address, and telephone number of the broker;

b. A full, complete, and accurate description of all offers, counteroffers, acceptances, and rejections relating to the proposed life settlement contract;

c. A disclosure of all affiliations or contractual arrangements between the broker and any person making an offer in connection with the proposed life settlement contract; and

d. All estimates of the life expectancy of the insured obtained by the licensee in connection with the life settlement.

34.     Plaintiffs are informed and believe that none of the broker disclosures required under Insurance Code §10113.2(f) were ever made to Decedent before or during the time of the execution

of the Life Settlement. Further, no broker was ever utilized or otherwise involved in the negotiation or sale of the Life Settlement.

### **Requirements Where Insured is Terminally Ill at Time of Life Settlement**

35. Insurance Code §10113.3 lists the requirements and duties of the parties to a life settlement contract where the insured, as owner of the life insurance policy, is suffering from a terminal illness.

36. Under Insurance Code §10113.3(a)(1)-(2), a provider entering into a life settlement contract with the owner of a policy on the life of an insured who is terminally ill must first obtain:

    a. a written statement from a licensed attending physician that the owner is of sound mind and under no constraint or undue influence to enter into a settlement contract, if the owner is the insured; and

    b. a document in which the insured consents to the release of his or her medical records to a provider, settlement broker, or insurance producer.

37. "Provider" is defined as "a person, other than an owner, who enters into or effectuates a life settlement contract with an owner." Cal. Ins. Code §10113.1.

38. Plaintiffs are informed and believe that at no time did Defendant EBY or anyone on behalf of EBY obtain a written statement from a licensed attending physician that Decedent, the owner of the Policy, was of sound mind and under no constraint or undue influence to enter into the Life Settlement.

39. Plaintiffs are also informed and believe that at no time did EBY or anyone on behalf of EBY obtain a document in which Decedent consented to the release of his medical records to EBY, any settlement broker, or any insurance producer.

40. Under Insurance Code §10113.3(c), the provider of a life settlement must also obtain a witnessed document whereby the owner:

    a. consents to the settlement contract;

    b. represents that the owner has a full and complete understanding of the settlement contract and a full and complete understanding of the benefits of the policy;

    c. acknowledges that the owner is entering into the settlement contract freely and

voluntarily; and

    d.   the person with a terminal illness or condition, acknowledges that the insured has a terminal illness and that the terminal illness or condition was diagnosed after the policy was issued.

41. Plaintiffs are informed and believe that at no time did EBY or anyone else on behalf of EBY obtain a witnessed document showing that Decedent consented to the Life Settlement. Plaintiffs are also informed and believe that the Life Settlement Contract attached as **EXHIBIT A** is the only document that evinces Decedent's acknowledgement of the Life Settlement, but contains no evidence of the presence of an independent witness, and contain no statements of acknowledgements for a life settlement contract necessary to be valid and enforceable as required by law.

42. Plaintiffs are informed and believe that at no time, either before or at the time of the execution of the Life Settlement, did EBY or anyone else on behalf of EBY obtain a statement by the Decedent, as owner of the Policy, representing that he had a full and complete understanding of the Life Settlement.

43. Plaintiffs are informed and believe that at no time, either before or during the execution of the Life Settlement, did EBY or anyone else on behalf of EBY obtain a statement by the Decedent, as owner of the Policy, representing that he had a full and complete understanding of the benefits of the Policy.

44. Plaintiffs are informed and believe that at no time, either before or at the time of the execution of the Life Settlement, did EBY or anyone else on behalf of EBY obtain a statement by the Decedent, as owner of the Policy, acknowledging that he entered into the Life Settlement freely and voluntarily.

45. Plaintiffs are informed and believe that at no time, either before or at the time of the execution of the Life Settlement, did EBY or anyone else on behalf of EBY obtain a witnessed statement by the Decedent, as owner of the Policy, that he had a terminal condition at the time of the negotiation and execution of the Life Settlement.

46. Plaintiffs are informed and believe that at no time, either before or at the time of the execution of the Life Settlement, did EBY or anyone else on behalf of EBY obtain a statement by

1  the Decedent, as owner of the Policy, that his terminal illness/condition was diagnosed after the

2  Policy was issued.

### Required Notice to Insurer for Life Settlements

3

4  47.    Under Insurance Code §10113.3(g), within twenty (20) days after an owner executes

5  the life settlement contract, the provider must give written notice to the insurer that issued the

6  insurance policy that the policy has become subject to a life settlement contract.  The notice must be

7  accompanied by the disclosure documents required by Insurance Code §10113.2(d).

8  48.    Plaintiffs are informed and believe that, at no time within twenty (20) days after the

9  Decedent executed the Life Settlement, did EBY or anyone else on behalf of EBY give written

10 notice to MetLife Insurance that the Policy had become subject to the Life Settlement Contract.

### Proceed Payment Requirements for Life Settlements

11

12 49.    Under Insurance Code §10113.3(j), within three (3) business days after receipt from

13 the owner of documents to effect the transfer of the insurance policy, the "provider" must pay the

14 proceeds of the settlement to an escrow or trust account managed by a trustee or escrow agent in a

15 state or federally chartered financial institution pending acknowledgment of the transfer by the issuer

16 of the policy.

17 50.    Plaintiffs are informed and believe that, at no time within three (3) days after receipt

18 of the documents to effect the transfer of the Policy did EBY or anyone else on behalf of EBY pay

19 the proceeds of the settlement to an escrow or trust account managed by a trustee or escrow agent in

20 a state or federally chartered financial institution pending acknowledgment of the transfer by

21 MetLife Insurance.  In fact, EBY, instead, paid one-fifth (1/5) of the total sale amount, *i.e.*, $50,000,

22 directly to the Decedent at or near the time of the execution of the Life Settlement, and then paid the

23 remaining four-fifth (4/5) of the total sale, *i.e.*, $200,000, directly to a newly set up Second Trust

24 *over one full year later* and after Decedent's death.  No payments were made within three (3)

25 business days after receipt to a trust account or escrow from the owner of documents to affect the

26 transfer of the Policy as required by law.

### Other Required Statements for Life Settlements

27

28 51.    Under Insurance Code §10113.3(i), all life settlement contracts entered into in

---

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY –
*Duggs, et al. v. Eby*- No. 3:14-cv-03734                                                11

California must provide that the owner may rescind the contract under certain circumstances as listed in §10113.2(r).

52. As shown by **EXHIBIT A**, no statement was made in the attempted Life Settlement Contract regarding the Decedent's right, as owner of the Policy, to rescind the Life Settlement.

### Fraudulent Life Settlement Acts

53. Insurance Code §10113.3(s) states:

> It is a fraudulent life settlement act and a violation of this section for any person to do any of the following . . . :
> ******
>> (2) Engage in any transaction, practice, or course of business if a person knows or reasonably should have known that the intent was to avoid the notice requirements of this section.
>> (3) Engage in any fraudulent act or practice in connection with any transaction relating to any settlement involving an owner who is a resident of this state.
>> (4) Fail to provide the disclosures or file the requested reports with the commissioner as required by this act.

Ins. Code §10113.3(s).

54. Plaintiffs are informed and believe that EBY engaged in a transaction, practice or course of business in purchasing the Policy from the Decedent via the Life Settlement with the intention to avoid the notice requirements of Insurance Code §§10113.2(d), 10113.2(f) and 10113.3(g) as referenced above, thereby violating Insurance Code §10113.3(s) and committing a fraudulent life settlement act.

55. Plaintiffs are also informed and believe that EBY engaged in fraudulent acts or practices in connection with the Life Settlement involving the Decedent, who was the owner of the Policy and a resident of California at that time, by violating Insurance Code §§10113.3(a)(1)-(2), 10113.3(c) and 10113.3(j) as referenced above, thereby violating Insurance Code §10113.3(s) and committing a fraudulent life settlement act.

56. Plaintiffs are further informed and believe that EBY failed to provide the disclosures or file the requested reports with the commission as required by Insurance Code §§10113.2(c), 10113.3(c) and 10113.3(i) as referenced above, thereby violating Insurance Code §10113.3(s) and

---

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY –
*Duggs, et al. v. Eby*- No. 3:14-cv-03734                                    12

1    committing a fraudulent life settlement act.

2    57. Insurance Code §10113.3(s) further states that it is a fraudulent life settlement act and

3    a violation of this section for any person to do any of the following acts as listed in §10113.1(g):

4    (1)Acts or omissions committed by any person that, for the purpose of depriving
5    another of property or for pecuniary gains, commits . . . acts, including, but not
6    limited to, the following:

7    (A) Presenting, causing to be presented, or preparing with knowledge and
8    belief that it will be presented to or by a provider, premium finance lender,
     broker, insurer, insurance producer, or any other person, false material
9    information, or concealing material information, as part of, in support of, or
     concerning a fact material to one or more of the following:

10   (i) An application of the issuance of a life settlement contract or
     insurance policy.
11   ***********

12   (iii) A claim for payment or benefit pursuant to a life settlement
     contract or insurance policy.
13   (iv) Premiums paid on an insurance policy.

14   (v) Payments and changes in ownership or beneficiary made in
     accordance with the terms of a life settlement contract or insurance
15   policy.

16   **********
     (vii) The solicitation, offer to enter into, or effectuation of, a life
17   settlement contract or insurance policy.

18   (viii) The issuance of written evidence of life settlement contracts or
     insurance.
19   ********

20   (B) Employing any device, scheme, or artifice to defraud in the business of
21   life settlements
     ********

22   (2) Any of following that any person does . . . in the furtherance of a fraud, or to
23   prevent the detection of a fraud:
     ********

24   (C) Transact the business of life settlements in violation of laws requiring a
25   license, certificate of authority, or other legal authority for the transaction of
     the business of life settlements.

26   Ins. Code §10113.1(g).

27   58. Plaintiffs are further informed and believe that EBY deprived the TRUST, the

28   original beneficiary of the Policy, of the policy premiums for EBY's own pecuniary gains, by

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY –
*Duggs, et al. v. Eby*- No. 3:14-cv-03734                                        13

concealing the material fact that the Decedent was not of sound mind at the time the Life Settlement

Contract was drafted or when executed, and by avoiding the requirements pursuant to Insurance

Code §§10113.1-10113.3 in attempting the Life Settlement. EBY concealed these material facts

when EBY made his claim for payment to MetLife of the Life Insurance proceeds pursuant to the

Life Settlement when EBY made payments and changes in ownership and/or beneficiary made in

accordance with the terms of the Life Settlement, during the solicitation, offer to enter into, or

effectuation of, the Life Settlement with Decedent, and during the time of the issuance of written

evidence of the Life Settlement Contract attached as **EXHIBIT A**.

59.     Plaintiffs are further informed and believe that EBY, in the furtherance of his fraud in

purchasing the Policy from Decedent while Decedent was not of sound mind, and to prevent the

detection of this fraud, transacted the execution of the Life Settlement in violation of the Insurance

Code requiring a license, certificate of authority, or other legal authority for the transaction of the

business of life settlements. Neither EBY, nor anyone acting on behalf of EBY, nor else involved in

the Life Settlement transaction, was licensed by the California Insurance Commissioner to sell,

purchase or broker the sale of life settlements, or had any other certificate of authority or other legal

authority for the transaction of the Life Settlement at the time of the negotiation, drafting or

execution of the Life Settlement.

60.     Under Insurance Code §10113.3(t), life settlement contracts and applications for these

contracts, regardless of the form of transmission, must contain the following statement or a

substantially similar statement:

> Life settlement contract and applications for life settlement contracts,
> regardless of the form of transmission, shall contain the following
> statement or a substantially similar statement:
>
> > "Any person who knowingly presents false information in an
> > application for insurance or for a life settlement contract may be
> > subject to criminal or civil liability."

Ins. Code §10113.3(t).

61.     Plaintiffs are informed and believe that the Life Settlement Contract, as shown in

**EXHIBIT A**, did not contain the statement listed in Insurance Code §10113.3(t), in whole or in

part, or contain a substantially similar statement, in violation of California law.

62.     Under Insurance Code §10113.2(t), a violation of the provisions of §10113.2 constitutes a misdemeanor.

### FIRST CLAIM FOR RELIEF

#### (Declaratory Relief As To the Life Settlement Contract)

#### (Brought by Plaintiff GEORGINA R. DUGGS, as Trustee of the TRUST)

63.     Plaintiffs hereby incorporate by reference each of the allegations of Paragraphs 1 through 62, above, as though fully set forth at length in this Claim.

64.     As alleged herein, this has created an actual, present and justiciable controversy between the parties to this action because Defendant EBY entered into a Life Settlement with Decedent that at no time ever formed a valid contract, in whole or in part, due to the specific violations of Insurance Code §§10113.2(b)(1), 10113.2(c), 10113.2(d), 10113.2(f), 10113.3(a)(1)-(2), 10113.3(c), 10113.3(g), 10113.3(j), and 10113.3(i), as noted above in paragraphs 26 through 62 of this Complaint. EBY continues to dispute the impropriety of the Life Settlement and has given every indication that he will continue to dispute such unless and until this Court orders EBY to pay to the TRUST the Policy premiums minus prior sums paid by EBY per the arrangements of the Life Settlement.

65.     Plaintiff GEORGINA, as Trustee of the TRUST, requests that this Court find and declare that the attempted Life Settlement negotiated, drafted and executed between EBY and Decedent is illegal, invalid, improper and insufficient to form a binding contract.

66.     Plaintiff GEORGINA, as Trustee of the TRUST, further requests that this Court find and declare that because the Life Settlement was ineffective to form a contract, the Policy would otherwise still belong to Decedent if Decedent was still presently living.

67.     Plaintiff GEORGINA, as Trustee of the TRUST, further requests that this Court find and declare that, now that since the Decedent has past away, the proceeds of the Policy rightfully belong to the Policy's original beneficiary, the TRUST, to benefit the beneficiaries of the TRUST, Plaintiffs GEORGINA, ZANE and GEMMA, since the Life Settlement was ineffective to form a valid contract.

WHEREFORE, Plaintiffs seek relief as set forth below.

### SECOND CLAIM FOR RELIEF

### (Statutory Fraud and Common Law Fraud)

### (Brought by Plaintiff GEORGINA R. DUGGS, as Trustee of the TRUST)

68. Plaintiffs hereby incorporate by reference each of the allegations of Paragraphs 1 through 67, above, as though fully set forth at length in this Claim.

69. As noted in paragraphs 53 through 62 of this Complaint, Defendant EBY committed fraudulent life settlement acts and violations of Insurance Code §10113.3(s) by, *inter alia*:

   a. engaging in a transaction, practice or course of business in attempting to purchase the Policy from the Decedent via the Life Settlement with the intention to avoid the notice requirements of the Insurance Code in:

      i. violating the notice requirements of §10113.2(d) by failing to provide to Decedent *any* of the many listed required disclosures listed therein, including:

         a) the existence of possible alternatives to life settlements (Ins. Code §10113.2(d)(1));

         b) the fact that life settlements may be taxable and Decedent should seek the assistance of a professional tax adviser (Ins. Code §10113.2(d)(2));

         c) that Decedent should seek the assistance of a professional financial adviser since a life settlement contract may cause other owner rights or benefits to be forfeited (Ins. Code §10113.2(d)(5));

         d) that changing the Policy's ownership could limit Decedent's future ability to purchase life insurance (Ins. Code §10113.2(d)(6));

         e) that Decedent had a right to rescind the Life Settlement within thirty (30) days of the date of execution (Ins. Code §10113.2(d)(7));

         f) that the proceeds of the Life Settlement would be sent to Decedent within three (3) business days after EBY received the insurer's acknowledgment that ownership of the policy had been transferred and the new beneficiary had been designated in accordance with the terms

of the Life Settlement (Ins. Code §10113.2(d)(8));

g) the existence of any affiliations or contractual relations, if any, between EBY and the broker of the Life Settlement (Ins. Code §10113.2(d)(12));

h) the existence of any affiliations, if any, between EBY and the Policy's insurer (Ins. Code §10113.2(d)(12));

i) that a broker would represent Decedent exclusively, and not EBY, the insurer or any other person (Ins. Code §10113.2(d)(13));

j) that a broker owed a fiduciary duty to Decedent, including a duty to act according to the Decedent's instructions and in the best interest of Decedent as owner (Ins. Code §10113.2(d)(13)); and

k) the name, business address and telephone number of the broker to be used in negotiating the Life Settlement;

ii. violating the notice requirements of §10113.2(f) by failing to involve a broker to provide Decedent with the following required disclosures before execution of the Life Settlement Contract:

a) the name, business address and telephone number of the broker to be used in negotiating the Life Settlement (Ins. Code §10113.2(f)(1));

b) a full, complete, and accurate description of all of the offers, counteroffers, acceptances, and rejections relating to the proposed Life Settlement Contract (Ins. Code §10113.2(f)(2));

c) a disclosure of any affiliations or contractual arrangements between the broker and any person making an offer in connection with the proposed Life Settlement Contract (Ins. Code §10113.2(f)(3)); and

d) all estimations of the life expectancy of Decedent obtained by the licensee in connection with the Life Settlement (Ins. Code §10113.2(f)(4));

iii. violating the notice requirements of §10113.3(g) by failing to give MetLife

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY –
*Duggs, et al. v. Eby*- No. 3:14-cv-03734                                           17

written notice that the Policy has become subject to the Life Settlement within twenty (20) days of the execution of the Life Settlement Contract, as Plaintiffs are informed and believe.

b. engaging in fraudulent acts or practices in connection with the Life Settlement involving the Decedent, who was the owner of the Policy and a resident of California at that time, by:

  i. violating Insurance Code §10113.3(a)(1) by fraudulently failing to obtain a written statement from a licensed attending physician that Decedent was of a sound mind and under no constraint or undue influence to enter into the Life Settlement, all while knowing Decedent's mental illness/condition due to the brain cancer and the severity of such, with the intent and purpose of deceiving a trusting friend to sell the Policy with $1.5 Million in death benefits for a mere $250,000, taking such proceeds away from the TRUST;

  ii. violating Insurance Code §10113.3(a)(2) by fraudulently failing to obtain a document in which Decedent consented to the release of his medical records to EBY, a settlement broker or the insurance producer, all while knowing of Decedent's mental illness/condition and the severity of such, with the intent and purpose of deceiving a trusting friend to sell the Policy with $1.5 Million in death benefits for a mere $250,000, taking such proceeds away from the TRUST;

  iii. violating Insurance Code §10113.3(c) by fraudulently failing to obtain a witnessed document signed by Decedent expressing that Decedent had a full and complete understanding of the Policy and the benefits of such, that Decedent was entering into the Life Settlement freely and voluntarily and that Decedent had a terminal illness/condition and that the illness/condition was diagnosed after the insurance of the Policy, all while knowing of Decedent's mental illness/condition and the severity of such, with the intent and purpose of deceiving a trusting friend to sell the Policy with $1.5 Million in death

benefits for a mere $250,000, taking such proceeds away from the TRUST;

iv.  violating Insurance Code § 10113.3(j) by fraudulently failing to pay EBY the full $250,000 proceeds of the attempted Life Settlement to an escrow or trust account managed by a trustee or escrow agent in a state or federally chartered financial institution within three (3) business days after receipt of the executed Life Settlement Contract and pending acknowledgment of the transfer by MetLife with the intent and purpose of deceiving a trusting friend to sell the Policy with $1.5 Million in death benefits for a mere $250,000, taking such proceeds away from the TRUST;

c.  failing to provide the disclosures or file the requested reports with the commission by:

i.  violating Insurance Code §10113.2(c) by failing to file with the California Department of Insurance a copy of all forms used by the licensee for the Life Settlement;

ii.  violating Insurance Code §10113.3(c) by failing to obtain a witnessed document signed by Decedent expressing that Decedent had a full and complete understanding of the Policy and the benefits of such, that Decedent was entering into the Life Settlement freely and voluntarily and that Decedent had a terminal illness/condition and that the illness/condition was diagnosed after the insurance of the Policy; and

iii.  violating Insurance Code §10113.3(i) by failing to provide in the Life Settlement Contract attached as **EXHIBIT A** that Decedent may rescind the contract on or before thirty (30) days after the date the Life Settlement was executed by the parties thereto or within fifteen (15) days from receipt by Decedent of the full payment of the proceeds; and

iv.  further violating Insurance Code §10113.3(i) by failing to provide in the Life Settlement Contract attached as **EXHIBIT A** that Decedent had received all required disclosures or before thirty (30) days after the date the Life Settlement was executed by the parties thereto or within fifteen (15) days from

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY –
*Duggs, et al. v. Eby*- No. 3:14-cv-03734                                                    19

receipt by Decedent of the full payment of the proceeds.

EBY's acts listed herein were all, and each separately, specific violations of Insurance Code §10113.3(s) and are acts of statutory fraud against Decedent, as well as the TRUST as the rightful beneficiary of the Policy, and thus, effect the attempted Life Settlement as void.

70.     Defendant EBY also committed fraudulent life settlement acts and specific violations of Insurance Code §10113.3(s) by violating Insurance Code §10113.1(g) in depriving the Decedent and the TRUST, the proper and intended beneficiary of the Policy, of the Policy death benefit proceeds for EBY's own pecuniary gains, by presenting, causing to be presented, or preparing with knowledge and belief that it will be presented by EBY, as the provider to MetLife, the insurer of the Policy:

    a.  the application of the issuance of the Life Settlement (Ins. Code §10113.1(g)(1)(A)(i));

    b.  a claim for payment or benefit pursuant to the Life Settlement Contract and Policy (Ins. Code §10113.1(g)(1)(A)(iii));

    c.  any and all premiums paid by EBY on the Policy after the Life Settlement Contract was attempted (Ins. Code §10113.1(g)(1)(A)(iv));

    d.  changes in ownership and beneficiary made in accordance with the terms of the Life Settlement Contract and Policy (Ins. Code §10113.1(g)(1)(A)(v));

    e.  offering to enter into and effectuating the Life Settlement Contract (Ins. Code §10113.1(g)(1)(A)(vii)); and

    f.  issuing written evidence of the Life Settlement Contract to the insurer (Ins. Code §10113.1(g)(1)(A)(viii))

all while EBY concealed the material fact that the Decedent was not of sound mind at the time the Life Settlement Contract was drafted or executed.  EBY concealed these material facts when EBY made his claim for payment to MetLife of the Life Insurance proceeds pursuant to the Life Settlement, when EBY made payments and changes in ownership and/or beneficiary made in accordance with the terms of the Life Settlement, during the solicitation, offer to enter into, or effectuation of, the Life Settlement with Decedent, and during the time of the issuance of written

evidence of the Life Settlement attached as **EXHIBIT A**.  These acts were all, and each separately, specific violations of Insurance Code §10113.1(g)(1)(A), are acts of statutory fraud against Decedent, as well as the TRUST as the rightful beneficiary of the Policy, and thus effect the attempted Life Settlement as void.

71.     Defendant EBY further committed a fraudulent life settlement act and violation of Insurance Code 10113.3(s) by violating Insurance Code 10113.1(g)(2)(C) in transacting the execution of the Life Settlement in violation of the Insurance Code requiring a license, certificate of authority, or other legal authority for the transaction of the business of life settlements in the furtherance of a fraud in purchasing the Policy from Decedent while Decedent was not of sound mind, and to prevent the detection of this fraud.  EBY, nor anyone acting on behalf of EBY, nor else involved in the Life Settlement transaction, was not licensed by the California Insurance Commissioner to sell, purchase or broker the sale of life settlements, or had any other certificate of authority or other legal authority for the transaction of the Life Settlement at the time of the negotiation, drafting or execution of the Life Settlement.  EBY's acts listed herein were all, and each separately, specific violations of Insurance Code §10113.1(g)(2)(C) and acts of statutory fraud against Decedent, as well as the TRUST as the rightful beneficiary of the Policy, and thus, effect the attempted Life Settlement as void.

72.     Defendant EBY further violated Insurance Code §10113.3(t) by drafting and executing the Life Settlement Contract attached as **EXHIBIT A** without including the statement or a substantially similar statement to the statement "[a]ny person who knowingly presents false information in an application for insurance or for a life settlement contract may be subject to criminal or civil liability."  Ins. Code §10113.3(t).  Thus, EBY has committed statutory fraud against Decedent, as well as the TRUST as the rightful beneficiary of the Policy, and thus the Life Settlement is void as a result of the omission of this required contractual language pursuant to Insurance Code §10113.3(t).

73.     At all times material hereto, a fiduciary relationship and relationship of trust and confidence was formed between Decedent and EBY which allowed EBY to unduly influence Decedent.  EBY was well aware of Decedent's history with brain cancer, and knew as of 2010 and

1  thereafter, that Decedent was suffering from a reoccurrence of cancer that had caused an inoperable

2  and wide-spread brain tumor, was undergoing chemotherapy and daily doses of slow-release

3  morphine, which all triggered a severe mental condition for Decedent that caused seizures and

4  severely altered his mood, personality, perception of reality, and ability to function or make

5  decisions in a normal cognitive manner, made him easily confused, and not mentally alert so that he

6  could understand and comprehend financial matters and make decisions on his own behalf and on

7  behalf of the TRUST.  EBY knew that he could take advantage of and unduly influence Decedent.

8      74.    In order to convince Decedent that he should sell the Policy to EBY via the Life

9  Settlement and allow EBY to transfer the beneficiary status into his own name, EBY intentionally

10  misrepresented to Decedent the legal requirements noted herein to form a proper and legitimate sale

11  of the Policy via a life settlement or concealed such requirements from Decedent.  Further, EBY,

12  among the other misrepresentations described herein, misrepresented that the sale of the Policy

13  would be to their financial benefit, would not be a financial detriment to them, would have no

14  adverse financial consequences, and was for their financial betterment, as is more fully described

15  herein.  Moreover, EBY concealed from Plaintiffs the true financial circumstances and other

16  disadvantages to Decedent and Plaintiffs if the Policy with death benefits valued at $1.5 Million was

17  sold to EBY for a mere $250,000.  Additionally, EBY concealed the fact that Decedent must be of a

18  sound mind to enter into the transaction, that certain forms and other disclosures were necessary

19  under the Insurance Code as described herein, and that Decedent must be evaluated by a physician

20  prior to entering into the Life Settlement.

21      75.    In order to effect the sale of the Policy via the Life Settlement, Defendant EBY made

22  no attempt to involve anyone besides Decedent drafting or execution of the Life Settlement.  Instead,

23  EBY concealed the Life Settlement from Decedent's financial advisor(s), Decedent's spouse,

24  Plaintiff GEORGINA, and all of Decedent's other close relatives and friends from the details of the

25  improper, illegitimate and illegal Life Settlement, despite EBY's previous knowledge of Decedent's

26  failing health and mental condition/illness.

27      76.    These misrepresentations and concealments were important and material; the

28  misrepresentations were also false when made.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY –
*Duggs, et al. v. Eby*- No. 3:14-cv-03734                                                  22

77.     Defendant also knew that the misrepresentations were false when made, or they and the concealments were made recklessly and without regard for their truth, and/or were made unreasonably when Defendant should have known, by reasonable inquiry, that they were untrue. The true facts were concealed intentionally or in reckless disregard for their truth or when Defendant knew or should have known on reasonable inquiry that Decedent was unaware of the true facts relating to the advantages and disadvantages of the attempted Life Settlement.

78.     Defendant EBY also knew at the time these misrepresentations were made that they would likely influence Decedent to sell the Policy to EBY via the Life Settlement.  EBY also took advantage of the position of undue influence that EBY had over Decedent, which also resulted from the latter being mentally infirmed, of unsound mind and not mentally alert because of his mental illness/condition resulting from the brain tumor, chemotherapy treatment and morphine drugs.  That is, Decedent was peculiarly susceptible to the influence of Defendant EBY.

79.     Decedent reasonably relied on these misrepresentations to his detriment and to the detriment of the TRUST which is the rightful and intended beneficiary of the Policy's death benefits.

80.     As a direct and proximate result of this wrongdoing by Defendant EBY, Plaintiff GEORGINA as Trustee on behalf of the TRUST has suffered damages plus attorneys' fees for bringing this action and righting the wrongs that are described herein and which have been committed by Defendant, all of which are compensable in a case of this kind.

81.     Moreover, pursuant to Civil Code §3345, Plaintiff GEORGINA as Trustee on behalf of the TRUST is entitled to treble damages as a fine, civil penalty or other penalty to punish and deter Defendant EBY since Decedent was a "disabled person" as defined under Civil Code §1761(g) in that Decedent suffered from a "physical or mental impairment" that substantially limited Decedent's major life activities of caring for himself, performing manual tasks, speaking and working due to the mental or psychological disorder, including an intellectual disability, organic brain syndrome, and/or mental illness as a result of the diffuse progression of cancer in Decedent's brain with abnormalities in his right temporal lobe invading into the internal capsule on the right medial thalamus that was diagnosed as inoperable.  EBY knew or should have known that his conduct in fraudulently obtaining the Policy via the attempted Life Settlement "sale" was directed to

a "disabled person." EBY's conduct caused Decedent, a "disabled person," to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the Decedent. Decedent was also substantially more vulnerable than other members of the public to EBY's fraudulent and prohibited conduct because of his poor health and impaired understanding, and suffered actual and substantial economic damage resulting from EBY's conduct in being deprived of the Policy's $1.5 Million death benefits.

82.     Further, Defendant's conduct, as described herein, was fraudulent, malicious, despicable reprehensible and/or oppressive, as defined in Civil Code §3294, and entitles Plaintiff GEORGINA as Trustee on behalf of the TRUST to punitive damages by way of example and as a means of punishing Defendant for engaging in such fraudulent, malicious, despicable reprehensible and/or oppressive conduct.

WHEREFORE, Plaintiffs seek relief as set forth below.

### THIRD CLAIM FOR RELIEF:

**(Financial Abuse of a Dependent Adult Under The Elder Abuse and Dependent Adult Civil Protection Act (EADACPA)) (Welf & I Code §§ 15600-15675)**

**(Brought by Plaintiffs GEORGINA R. DUGGS, as Trustee of the TRUST, GEORGINA R. DUGGS, individually, ZANE DUGGS, a minor, by GEORGINA R. DUGGS, his natural guardian, and GEMMA DUGGS, a minor, by GEORGINA R. DUGGS, her natural guardian)**

83.     Plaintiffs hereby incorporate by reference each of the allegations of Paragraphs 1 through 82, above, as though fully set forth at length in this Claim.

84.     For part of the time relevant to this action including during the time of the allegations herein related to the Life Settlement, Decedent resided in Monterey County, California.

85.     Decedent suffered from the mental limitations specified herein, which restricted Decedent's ability to carry out normal activities or to protect his rights.

86.     Decedent suffered from a diffuse progression of cancer in his brain with abnormalities in his right temporal lobe invading into the internal capsule on the right medial thalamus that was diagnosed as inoperable. This cancerous brain tumor along with the chemotherapy and daily doses of slow-release morphine caused a severe mental condition for

Decedent that caused seizures and severely altered his mood, personality, perception of reality, and ability to function or make decisions in a normal cognitive manner.

87.     At all times relevant to this action, Defendant EBY had a confidential relationship with Decedent, in that EBY maintained a close, personal relationship with Decedent from high school to EBY's death over twenty (20) years later.  EBY was in regular communication with Decedent both during the time EBY was first suffering from a brain tumor in 1997 and through the reoccurrence of the brain cancer in 2010 until Decedent's death.  EBY was always aware of Decedent's condition and Plaintiffs are informed and believe that EBY provided friendship and counsel to EBY throughout that time.

88.     The taking, misappropriating, obtaining and/or retaining of Decedent' personal property, *i.e.*, the Policy, to which the TRUST was the beneficiary, by Defendant EBY by means of the Life Settlement was for a wrongful use and/or with the intent to defraud in that Decedent, while unable to protect his own rights due to his diminished mental ability, and while EBY knew of this diminished mental ability, was deprived of the value of the Policy, including the eventual proceeds of the Policy upon his death, through the Life Settlement for a fraction of the Policy's value.

89.     Defendant EBY also took, misappropriated, obtained and/or retained Decedent's personal property by undue influence in that Decedent, while unable to protect his own rights due to his diminished mental ability, and while EBY knew of this diminished mental ability, was deprived of the value of the Policy, including the eventual proceeds of the Policy upon his death, through the Life Settlement for a fraction of the Policy's value.

90.     Defendant EBY further took, misappropriated, obtained and/or retained Decedent's personal property when Decedent lack capacity under California Probate Code §812 and/or was of unsound mind, but not entirely without understanding under Civil Code §39, and failed to return the property upon demand in that Decedent, while unable to protect his own rights due to his diminished mental ability, and while EBY knew of this diminished mental ability, was deprived of the value of the Policy, including the eventual proceeds of the Policy upon his death, through the Life Settlement for a fraction of the Policy's value.

91.     Defendant EBY knew or should have known that this conduct was likely to be

harmful to Decedent, the TRUST, which was the original and intended beneficiary of the Policy, and to GEORGINA, ZANE and GEMMA, the beneficiaries of the TRUST.

92.     Defendant EBY's conduct constituted financial abuse under the California Welfare and Institutions Code §15657.5 as defined in Welfare and Institutions Code §15610.30.

93.     Defendant EBY was guilty of recklessness, oppression, fraud and/or malice in the commission of the abuse described above.

94.     Under California Welfare & Institutions Code §15657.3(d)(2), Plaintiffs GEORGINA as Trustee on behalf of the TRUST has standing to sue for the claim of financial abuse to Decedent as an "interested person" as defined by Probate Code §48(a)(1) since the Decedent's personal representative has refused to commence the action and because the TRUST is the original and rightful beneficiary of the Policy with a property right in the Policy that may be affected by this present proceeding.  *See also Estate of Lowrie*, 118 Cal. App. 4th 220 (2004).  Further, where trust property is involved, the trustee is the real party in interest with standing to bring such a claim.

95.     Under California Welfare & Institutions Code §15657.3(d)(2), Plaintiff GEORGINA, individually, has standing to sue for the claim of financial abuse to Decedent as an "interested person" as defined by Probate Code §48(a)(1) since the Decedent's personal representative has refused to commence the action and because she is the spouse of Decedent and beneficiary of the TRUST with a property right in the Policy that may be affected by this present proceeding.

96.     Under California Welfare & Institutions Code §15657.3(d)(2), Plaintiffs ZANE and GEMMA have standing to sue for the claim of financial abuse to Decedent as "interested person[s]" as defined by Probate Code §48(a)(1) since the Decedent's personal representative has refused to commence the action and because they are the children and heirs of Decedent, as well as beneficiaries of the TRUST with a property right in the Policy that may be affected by this present proceeding.

97.     Under Welfare and Institutions Code §15657.5(a), as well as Civil Code §1780(e), Defendant EBY is liable to Plaintiffs for reasonable and mandatory attorney fees and costs.

98.     Under Civil Code §3294, Defendant EBY is liable for punitive damages, as noted in paragraph 82 of this Complaint.

1    WHEREFORE, Plaintiffs seek relief as set forth below.

2    ## FOURTH CLAIM FOR RELIEF:

3    ### (Breach of Fiduciary Duty)

4    **(Brought by Plaintiffs GEORGINA R. DUGGS, as Trustee of the TRUST, GEORGINA R.**

5    **DUGGS, individually, ZANE DUGGS, a minor, by GEORGINA R. DUGGS, his natural**

6    **guardian, and GEMMA DUGGS, a minor, by GEORGINA R. DUGGS, her natural guardian)**

7    99.    Plaintiffs hereby incorporate by reference each of the allegations of Paragraphs 1

8    through 98, above, as though fully set forth at length in this Claim.

9    100.    Pursuant to California Probate Code §16400, when assets of an elder or dependent

10   adult are held in a trust, the trustee may be liable for breach of trust.  A breach of trust is a violation

11   by the trustee of any duty that the trustee owes a beneficiary.

12   101.    Plaintiffs are informed and believe that Decedent trusted and relied on Defendant

13   EBY and that EBY encouraged such trust and confidence.  EBY held himself out as a friend and

14   confidant to Decedent for over twenty (20) years and provided counsel to Decedent throughout the

15   time of Decedent's illness and mental condition.

16   102.    Defendant EBY also had a fiduciary relationship with Decedent in that EBY was

17   named as successor trustee to the TRUST, executor of Decedent's estate, power of attorney and

18   health care power of attorney in fact advocate for Decedent.

19   103.    Defendant EBY also had a fiduciary relationship with Plaintiff GEORGINA,

20   individually, in that EBY was also named as successor trustee, executor, power of attorney and

21   health care power of attorney advocate for Plaintiff GEORGINA.

22   104.    EBY had a fiduciary duty to determine the physical and mental capacity of Decedent

23   prior to the negotiation and sale of the Life Settlement, to only make financial and investment

24   recommendations that were suitable for the financial situation, needs, investment goals and risk

25   tolerance of Decedent, for the TRUST and for Plaintiff GEORGINA.  EBY also had a fiduciary duty

26   to scrupulously refrain from soliciting any investment or transaction, unless he had an affirmative

27   objectively reasonable belief that the transaction was suitable for Decedent, for the TRUST and for

28   Plaintiff GEORGINA.  EBY further had a fiduciary duty to only make recommendations that were

for the primary benefit of Decedent, the TRUST, and Plaintiff GEORGINA.

105.    EBY breached his fiduciary duty to Decedent, the TRUST and Plaintiff GEORGINA by attempting to transact the Life Settlement to fraudulently acquire the death benefit proceeds of the Decedent's Policy away from the TRUST, the rightful beneficiary of the Policy, all while knowing of Decedent's mental illness/condition and the severity of such, with the intent and purpose of deceiving Decedent, a trusting friend, to sell the Policy with $1.5 Million in death benefits for a mere $250,000, taking such proceeds away from the TRUST, thus depriving GEORGINA, ZANE and GEMMA, the beneficiaries of the TRUST of such amounts.

106.    Decedent trusted and relied upon EBY, who was his fiduciary, as well as the fiduciary of the TRUST and Plaintiff GEORGINA.

107.    As a direct and proximate result of EBY's numerous breaches of his fiduciary duties, all Plaintiffs have been damaged in a sum according to proof.

108.    EBY's conduct, in knowingly breach his fiduciary duties, as set forth above, was fraudulent, malicious, willful, despicable and oppressive.  Punitive damages are warranted as noted in paragraphs 82 and 98 of this Complaint.

109.    Pursuant to *Estate of Giraldin*, 55 Cal.4th 1058 (2012), beneficiaries of a trust have standing to challenge the trustee for conduct affecting their interests.  Thus, GEORGINA, individually, ZANE and GEMMA all have standing to sue Defendant EBY for breach of his fiduciary duties to the TRUST.

110.    Also pursuant to *Estate of Giraldin*, 55 Cal.4th 1058 (2012), if the trust in question is no longer revocable due either to the incapacity of the settlor or the death of the settlor, the beneficiaries of the trust have the right to question the actions of the trustee for his conduct prior to the death where that conduct harmed the now-vested interests of the beneficiaries.  Because of the death of Decedent, the TRUST is no longer revocable and, thus, GEORGINA, ZANE and GEMMA have the right to sue Defendant EBY for breach of his fiduciary duty to the TRUST prior to the death of Decedent.

WHEREFORE, Plaintiffs seek relief as set forth below.

///

**FIFTH CLAIM FOR RELIEF**

<u>(Rescission of the Contract Pursuant to Illegality (Civil Code §§1550, 1598), Incapacity (Civil</u>

<u>Code §1556 and Unconscionability)</u>

**(Brought by Plaintiff GEORGINA R. DUGGS, as Trustee of the TRUST)**

111.    Plaintiffs hereby incorporate by reference each of the allegations of Paragraphs 1 through 110, above, as though fully set forth at length in this Claim.

112.    Pursuant to California law, Civil Code §1598 provides that an essential element of a valid contract is a lawful object.  Pursuant to California law, Civil Code §1550 provides: "[w]here a contract has but a single object, and such object is unlawful, whether in whole or in part, or wholly impossible of performance, or so vaguely expressed as to be wholly unascertainable, the entire contract is void."

113.    As noted above in paragraph 62 of the complaint, a violation of the provisions of Insurance Code §10113.2 constitutes a misdemeanor under §10113.2(t).

114.    Plaintiffs contend that the Life Settlement Contract made between Decedent and defendant EBY was made in conflict with and in violation of, *inter alia*, the express statutes of §10113.2 subparts (b)(1), (c), (d), (f), and (r).  Thus, the Life Settlement Contract contrary to an express provision of law and is void and/or it is contrary to the policy of express law, though not expressly prohibited void and should be rescinded in its entirety under §§1550 and 1598 by way of illegality due to its unlawful and criminal object.

115.    Pursuant to California Law, Civil Code §1556 provides that "persons of unsound mind" are not capable of contracting.  Further, under Civil Code §§39(a) and 1689(b)(7), contracts made by persons of unsound mind but not entirely without understanding before a judicial determination of their incapacity are subject to rescission.

116.    Plaintiffs contend that the Life Settlement Contract signed between Decedent and EBY is in violation of California Civil Code §1556 in that Decedent was not of sound mind when negotiating and agreeing to the contract as alleged herein and, thus, the Life Settlement Contract is subject to rescission in its entirety.

117.    Finally, the Life Settlement Contract is unduly oppressive and unconscionable.  In

particular, the Life Settlement Contract was made with a party lacking capacity to agree and was fraudulently made by EBY with undue influence upon Decedent who was a dependent adult suffering from a life threatening and mind-altering brain tumor.  Such actions are contrary to California law, and as such, are unconscionable as a matter of law.

WHEREFORE, Plaintiffs seek relief as set forth below.

## SIXTH CLAIM FOR RELIEF:

### Unfair Competition (Cal. Bus. & Prof. Code section 17200, *et seq*.)

**(Brought by Plaintiffs GEORGINA R. DUGGS, as Trustee of the TRUST, GEORGINA R. DUGGS, individually, ZANE DUGGS, a minor, by GEORGINA R. DUGGS, his natural guardian, and GEMMA DUGGS, a minor, by GEORGINA R. DUGGS, her natural guardian)**

118.    Plaintiffs hereby incorporate by reference each of the allegations of Paragraphs 1 through 117, above, as though fully set forth at length in this Claim.

119.    California Business and Professions Code section 17200, *et seq.*, the Unfair Competition Law, ("UCL"), defines unfair competition to include any unlawful, unfair or fraudulent business act or practice.  The UCL authorizes any person who was injured by such unlawful, unfair or fraudulent business acts to bring an action for relief under the statute on his or her own behalf. The UCL also provides that a court may enjoy acts of unfair competition and other restitution.

120.    The business acts and practices of EBY as herein above described constitute unlawful business practices in violation of the UCL in that EBY violated numerous provisions of California law, as set forth herein.  Such business acts and practices of EBY include, but is not limited to, 1) the fraudulent purchase of the Policy via the Life Settlement while Decedent lacked capacity and was of unsound mind in suffering from a terminal brain tumor, and 2) conducting the negotiation and execution of the Life Settlement in violation of the numerous provision of the Insurance Code as set forth herein.

121.    Additionally, as a wrongful practice of Defendant, pursuant to Insurance Code §§1631, 10113.1 and 10113.2, it is unlawful and a misdemeanor to solicit or enter into a life settlement without obtaining a life settlement license from the California Insurance Commissioner. Such activity is wrongful under the UCL, and specifically, since neither Decedent nor EBY was

licensed within the state of California for the sale of the life settlement, Defendant EBY was not in compliance with the statute.

122. Additionally, Defendant engaged in false and misleading advertising, solicitation, or practice as prohibited by California Insurance Code §10113.2 by soliciting a purchase of the Policy from Decedent without having applied for or received a license from the California Insurance Commissioner.

123. The business acts and practices of Defendant as alleged herein also constitute unfair business practices in violation of the UCL in that the acts and practices of Defendant challenged herein offend public policy and are substantially injurious to consumers. Said acts and practices have no utility that outweighs the substantial harm to consumers.

124. The business acts and practices of Defendant EBY as alleged herein also constitute fraudulent business practices in that said acts and practices are likely to deceive members of the public as to their legal rights and obligations.

125. The unlawful, unfair and fraudulent business acts and practices of Defendant EBY described herein will persist and/or recur unless and until an injunction is issued by this Court.

126. As a direct and proximate result of the acts and practices described herein, Defendant has received and collected substantial monies from Decedent intended for Plaintiffs to which Defendant is not entitled. Such funds properly belong to Plaintiffs as beneficiaries of the Policy and constitute ill-gotten gains subject to an order of restitution and/or disgorgement.

127. Plaintiffs GEORGINA as Trustee on behalf of the TRUST, GEORGINA, individually, ZANE and GEMMA all have standing to sue under this claim since each sustained "an injury in fact and [have] lost money or property as a result of such unfair competition" on the party of Defendant EBY. Cal. Bus. & Prof. Code §17204. The TRUST sustained injury as the original and intended beneficiary of the Policy. GEORGINA, ZANE and GEMMA all sustained injury as the beneficiaries to the TRUST.

128. Pursuant to Business and Professions Code §17203, Plaintiffs seek an injunction against Defendant enjoining him from engaging in the unlawful acts and practices alleged herein. Plaintiffs also seek an order requiring Defendant to disgorge all ill-gotten gains and to provide

1    appropriate restitution to Plaintiffs.

2       129.     Plaintiffs also seek restitution under the UCL as victims of EBY's unlawful, unfair

3    and fraudulent business acts and practices. *See Stevens v. Super. Ct.* (*API Ins. Services, Inc.*), 75

4    Cal. App. 4th 594 (1999).

5       130.     In addition, pursuant to Code of Civil Procedure §1021.5 and/or any other applicable

6    provision of law, Plaintiffs seek attorneys' fees, costs and expenses incurred in the filing and

7    prosecution of this action.

8       131.     Further, pursuant to Civil Code §3345, Plaintiffs seek treble damages against

9    Defendant EBY since Decedent was a "disabled person," as defined by Civil Code §1761(g) and as

10    noted in herein at the time the unfair and deceptive acts or practices were committed against

11    Decedent.

12       WHEREFORE, Plaintiffs seek relief as set forth below.

13 

### SEVENTH CLAIM FOR RELIEF:

14 

### Constructive Trust

15 

**(Brought by Plaintiff GEORGINA R. DUGGS, as Trustee of the TRUST)**

16       132.     Plaintiffs hereby incorporate by reference each of the allegations of Paragraphs 1

17    through 131, above, as though fully set forth at length in this Claim.

18       133.     As a direct and proximate result of Defendant EBY's fraudulent misrepresentations

19    and otherwise wrongful conduct as alleged herein, the TRUST, as the original and intended

20    beneficiary of the Policy, has suffered damages in the amount of $1,250,000.00 plus interest, *inter*

21    *alia*, in the attempted sale of the Policy and the transfer of the beneficiary from the TRUST to

22    Defendant EBY by way of the attempted fraudulent, improper and illegal Life Settlement.

23       134.     By reason of the fraudulent and otherwise wrongful manner in which EBY obtained

24    his alleged right, claim or interest in and to the property, EBY has no legal or equitable right, claim

25    or interest therein, but, instead, EBY is an involuntary trustee holding said property and profits

26    therefrom in constructive trust for the TRUST with the duty to convey the same to the TRUST

27    forthwith.

28       135.     Thus, GEORGINA as Trustee on behalf of the TRUST seeks a declaration that

Defendant EBY hold the Policy death benefit of $1,500,000.00 minus the $250,000 already paid out to Decedent and the second trust as a constructive trustee for the benefit of the TRUST, and preliminary and permanent injunctions preventing Defendant EBY from moving, spending, transferring, bequeathing, hiding, or otherwise tampering with the $1,250,000 in profits wrongfully received as death benefits pursuant to the Policy issued to Decedent by MetLife.

WHEREFORE, Plaintiffs seek relief as set forth below.

## **PRAYER**

**WHEREFORE**, Plaintiffs pray for relief as follows:

1. For a declaration that the Life Settlement between Defendant JAMES EARL EBY and Decedent is invalid and insufficient to form a contract, and that the death benefit proceeds of the Policy rightfully belongs to the TRUST as the original and proper beneficiary of the Policy;

2. For a judgment that Defendant JAMES EARL EBY owes Plaintiffs the sum of $1,250,000, the amount of the death benefit proceeds of the Policy of $1,500,000 minus the $50,000 already paid to the Decedent and the $200,000 already paid to the Second Trust;

3. Rescission of the Life Settlement Contract and payment of its proceeds to the TRUST as the original and proper beneficiary of the Policy;

4. For general damages according to proof;

5. For special damages according to proof;

6. For a declaration that Defendant JAMES EARL EBY hold the Policy death benefit of $1,500,000.00 minus the $250,000 already paid out to Plaintiffs and Decedent as a constructive trustee for the benefit of the Plaintiffs;

7. Restitution to Plaintiffs from Defendant JAMES EARL EBY under Business & Professions Code §17200;

8. For attorneys' fees under Welfare and Institutions Code §15657.5(a), as well as Civil Code §1780(e);

9. For costs of suit incurred herein as the prevailing party and also pursuant to Welfare

and Institutions Code §15657.5(a), as well as Civil Code §1780(e);

10. For treble damages to redress unfair or deceptive acts or practices or unfair methods of competition under Civil Code §3345;

11. For punitive damages because of the malice, oppression or fraud of Defendant JAMES EARLY EBY in an amount appropriate to punish Defendant or to deter others from similarly acting;

12. For prejudgment and post-judgment interest as determined is appropriate under the law;

13. For preliminary and permanent injunctions preventing Defendant JAMES EARL EBY from moving, spending, transferring, bequeathing, hiding, or otherwise tampering with the $1,250,000 in profits wrongfully received as death benefits pursuant to the Policy issued to Decedent by MetLife;

14. For a Court order requiring that Defendant JAMES EARL EBY immediately cease acts that constitute unlawful, unfair or fraudulent business practices as alleged herein, and to enjoin Defendant from continuing to engage in any such acts or practices in the future;

15. For such other and further relief as is appropriate under the law.


Dated: August 18, 2014                          Respectfully submitted,


                                                KORNBLUM, COCHRAN,
                                                ERICKSON & HARBISON, LLP

                                                /s/ Guy O. Kornblum_____
                                                   Guy O. Kornblum, #39974

                                                /s/ Nicholas J. Peterson_____
                                                   Nicholas J. Peterson, #287902

1

**DEMAND FOR JURY**

2

3        Plaintiffs hereby demand a trial by jury in this matter as to all claims.

4

5   Dated: August 18, 2014                        Respectfully submitted,

6

7                                                 KORNBLUM, COCHRAN,
                                                  ERICKSON & HARBISON, LLP
8

9                                                 /s/ Guy O. Kornblum_____
10                                                    Guy O. Kornblum, #39974

11                                                /s/ Nicholas J. Peterson_____
12                                                    Nicholas J. Peterson, #287902

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT A

# LIFE SETTLEMENT PROPOSAL

Prepared by Edward Lee Duggs, Jr.
November 19, 2012

Exclusively for James Earl Eby

# CONTENTS

1.  Life Settlement Defined

2.  Met Life Insurance Policy Summary

3.  My Met Life Insurance Broker Information

4.  Proposal

# 1. LIFE SETTLEMENT DEFINED

As the policy owner, I will sell my life insurance policy to an individual or a company in exchange for cash. The new owner will keep the policy in force (by paying the premiums) and reap a significant ROI by receiving the death benefit when I die.

Most types of insurance are eligible for sale, including policies with little or no cash value, such as term insurance. Generally, to qualify for a life settlement, I (the insured) must have a life expectancy of 10 to 15 years or less, and a policy death benefit of at least $100,000 (in most cases).

The primary advantage to a life settlement is that I can get more for the policy than by cashing it in (surrendering the policy). Although there is little definitive information on the taxation of life settlements, the general treatment is that gain in excess of your basis in the policy is taxed to me as ordinary income.

Increasingly, business firms are buying life insurance policies of the terminally ill and re-selling them at marked-up prices as investments. Most policy owners solicit the assistance of a life settlement broker when attempting to sell their policies. Life settlement brokers contact life settlement companies to let them know that a policy is available for purchase. The broker then waits for the life settlement companies to bid on the policy. Upon receiving all of the bids, the broker lets the policy owner know which company offered the most money for the policy. Like an auction, the policy owner typically sells his or her policy to the company that is willing to pay the most money.

In a nutshell, my life insurance policy becomes an investment to you. I collect a chunk of money based on the face value of my policy, the third party (you) pays my insurance premiums and, when I die, you collects the full face value of the policy.

Although life settlements can be a valuable source of liquidity, the following issues apply:

1. I'm giving up control of the death benefit ($1,500,000.00).
2. The new policy owner(s) will have access to my past medical records and usually the right to request updates on my current health.
3. The life-settlement industry is very marginally regulated, so there's no guidance as to your policy's value - it's hard to determine whether I'm getting a fair price for my policy.

Source: http://www.investopedia.com/articles/pf/08/life-insurance-cash-in.asp#ixzz2CbPb31Rk

# 2. MET LIFE INSURANCE POLICY SUMMARY

- POLICY PROVIDER: MetLife Investors USA Insurance Company

- INSURED: Edward L. Duggs, Jr.

- POLICY OWNER: Edward L. Duggs, Jr.

- POLICY NUMBER: 210 227 420 USU

- EFFECTIVE DATE: August 29, 2010

- DEATH BENEFIT: $1,500,000.00

- MONTHLY PREMIUM: $600.00

- POLICY TYPE: UNIVERSAL, BUT TREATING IT LIKE A TERM POLICY WITH RESPECT TO MONTHLY PREMIUM PAYMENTS. AS A RESULT, THERE IS NO CURRENT CASH VALUE IN THE POLICY, ONLY A DEATH BENEFIT OF $1,500,000.00 USD.


I can fax the full 27 pages of the policy to you.  Please let me know if you would like me to do so and provide me with the appropriate fax number as I do not have access to a scanner athe VOQ.  The accompanying PDFs have my policy, electronic payment and premium change to $600 per month.

# 3. MY MET LIFE INSURANCE BROKER INFORMATION

As the policy owner, I will sell my life insurance policy to an individual or a company in exchange for cash. The new owner will keep the policy in force (by paying the premiums) and reap a significant ROI by receiving the death benefit when I die.

**Broker Information**
James W. Mader, CLU, ChFC
President, Mader and Shannon Wealth Management
Email: jwm@maddershannon.com
Mobile: 816.225.7033

**By Phone**
1.800.838.9988
Midwest Office
816.751.0585
West Office
702.433.4455

**By Fax**
816.751.0586

**By Mail**
Midwest Office
4505 Madison Avenue
Kansas City, MO 64111

West Office
2600 Paseo Verde Pkwy #200
Henderson, NV 89074

James W. Mader is President of Mader & Shannon Wealth Management, Inc. He has been in the financial services industry for 41 years, where he spent the first 26 years as a marketing executive with two life insurance companies. In this capacity, Jim hired, trained, and managed thousands of financial services representatives.

He received the designations of Chartered Life Underwriter and Chartered Financial Consultant from the American College of Bryn Mawr, Pennsylvania in 1977 and 1984 respectfully. Jim is the past President of the Kansas City chapter of the Society of Financial Services Professionals and currently serves on the International Board of the Society. The Society is a 75 year old organization of credentialed professionals with over 20,000 members nationally. SFSP is made up of financial professionals from accounting, insurance, investments, and law.

Jim is licensed in more than a dozen states for life, health, disability, and long term care insurance. Jim has provided expert witness services for investment and insurance litigation for law firms in Kansas, Kentucky, Missouri, and Nevada.

# 4. PROPOSAL

Do a modified Life Settlement deal with James Eby for the full death benefit value of $1,500,000.

Key Terms
- $250,000 paid in payments
  - $50,000 initial payment made payable to the Edward Lee Duggs, Jr Trust (to be created) paid on or before January 10, 2013
  - Subsequent payments of $50,000 to be paid on anniversary date of 1st payment less, I am in a permanent care situation or have passed away, whereupon balance to paid to my trust once the death benefits are paid out.
- Monthly premiums to be paid by James Eby effective January 5, 2013.
- Deal acceptance by James on or before January 5, 2012.
- Edward to provide health updates monthly to James; Edward to grant James access to health records.
- Legal expenses for the creation of any contracts, etc to be paid by James Eby.
- Creation of the Edward Lee Duggs, Jr trust to be paid by Edward.
- Primary emergency contact is James Eby.
- Current life expectancy is 6 months to 2.5 years.

If you have any questions, please do not hesitate to contact me at 408.821.4910.