**KORNBLUM ✦ COCHRAN**

# KCEH

**ERICKSON ✦ HARBISON**

Kornblum•Cochran•Erickson•Harbison, LLP, A Partnership of Professional Corporations and an Individual

GUY O. KORNBLUM (SBN 39974)
WALTER G. CRUMP (SBN 203743)
NICHOLAS J. PETERSON (SBN 287902)
TIMOTHY J. LEPORE (SBN 294247)
KORNBLUM, COCHRAN,
ERICKSON & HARBISON, LLP
1388 Sutter St., Suite 820
San Francisco, CA 94109
Telephone: (415) 440-7800
Facsimile:  (415) 440-7898

GEORGINA R. DUGGS, Individually and
as Trustee of the EDWARD & GEORGINA
DUGGS LIVING TRUST; ZANE DUGGS
and GEMMA DUGGS, minors, by
GEORGINA R. DUGGS, their natural guardian

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO

| | |
|---|---|
| GEORGINA R. DUGGS, Individually and as Trustee of the EDWARD & GEORGINA DUGGS LIVING TRUST; ZANE DUGGS and GEMMA DUGGS, minors, by GEORGINA R. DUGGS, their natural guardian,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES EARL EBY,<br><br>Defendant. | Case No.: 3:14-cv-03734-RS<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT JAMES EARL EBY'S MOTION TO DISMISS**<br><br>Date:        November 13, 2014<br>Time:        1:30 p.m.<br>Dept:        Courtroom 3, 17th Floor<br>Judge:      The Honorable Richard G. Seeborg<br><br>Complaint Filed: August 18, 2014 |

///

///

///

---

Opposition to Motion to Dismiss – *Duggs, et al. v. Eby*- **No. 3:14-cv-03734-RS**          0

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................ 1

II.  STATEMENT OF FACTS ......................................................................................... 2

III. ARGUMENT ............................................................................................................. 4

    A.  Legal Standard for Motion to Dismiss ......................................................... 4

    B.  All Plaintiffs Have Proper Standing to Bring Before this Court all Claims as
        Presented in the Complaint. ........................................................................... 5

        1. Georgina, as the Trustee of the Trust, Has Standing to Challenge the
           Beneficiary Designation Because the Trust Has Gained Vested Rights
           in the Policy Upon Decedent's Death ....................................................... 5

           i. California Cases Have Allowed Former Beneficiaries Standing
              To Maintain Claims Against a Substituted Beneficiary Where
              Acts Have Been Pled That Would Cause the Beneficiary Change To
              Be Deemed Void ........................................................................... 6

           ii. Plaintiff has Pled Plausible Facts to Show Eby's Life Settlement
              Contract with Decedent is Statutorily Void .................................... 7

        2. Georgina, on Behalf of the Trust has Standing to Bring a Claim for
           Recession of Contract and/or Declaratory Relief as Vested Beneficiary.... 9

        3. Georgina Duggs, Individually, Also Has Standing to Sue for the Claims of
           Declaratory Relief, Recession and Fraud Because of Her Community
           Property Interest in the Policy ................................................................. 11

        4. Eby's Assertions That Only the "Personal Representative" of a Decedent
           May Sue and That He is the "Personal Representative" of Decedent are
           Both Incorrect ......................................................................................... 12

    C.  The Complaint Properly Pleads Plaintiffs' Second Claim for Relief for Statutory
        Fraud Pursuant to Insurance Code sections 10113.1-10133.3 Since the Insurance Code
        Regulates Eby's Life Settlement Contract with Decedent ........................... 14

    D.  The Complaint Properly Pleads Plaintiffs' Second Claim for Relief for Common
        Law Fraud in California Pursuant to the Federal Standards ...................................... 16

         1. First, the Complaint Properly Alleges That Eby Concealed or
           Suppressed a Material Fact to Both Decedent and Plaintiffs .................. 17

2. Second, the Complaint Properly Alleges That Eby Was Under a Duty to Disclose the Material Fact to Both Decedent and Plaintiffs......................18

3. Third, the Complaint Properly Alleges That Eby Intentionally Concealed or Suppressed the Fact With the Intent to Defraud both Decedent and Plaintiffs ............................................................................19

4. Fourth, the Complaint Properly Alleges That Both Decedent and Plaintiffs Were Unaware of the Facts and Would Not Have Acted As He/They Did If He/They Had Known of the Concealed or Suppressed Facts.........................................................................................................20

5. Fifth and Finally, the Complaint Properly Alleges That Decedent and Plaintiffs Sustained Damage as a Result of the Concealment or Suppression of the Material Fact................................................................21

E. Plaintiffs' First, Third, Fourth, Fifth, Sixth and Seventh Claims For Relief Are Not Challenged by Eby in This Motion and, Thus, Remain..............................................22

F. Should the Court Dismiss Any Claim For Relief By Eby's Motion, Plaintiffs Should Have a Right to Amend Such Claim(s) ......................................................23

IV. CONCLUSION...................................................................................................................23

1

# TABLE OF AUTHORITIES

2

## **STATE CASES**

3

4
*Asdourian v. Araj*
        38 Cal. 3d 276 (1985) ....................................................................................................7

5

6
*Boschma v. Home Loan Center, Inc.*
        198 Cal. App. 4th 230 (2011) ................................................................... 17, 22

7
*Cook v. Cook*
        17 Cal. 2d 639 (1941) ....................................................................................................5

8

9
*Crusader Insurance Co. v. Scottsdale Insurance Co.*
        54 Cal. App. 4th 121 (1997) .......................................................................................17, 18

10

11
*Dunn v. New York Life Insurance Co.*
        46 Cal. App. 203 (1920) ................................................................................................6

12

13
*In re Estate of Lowrie*
        118 Cal. App. 4th 220 (2004) .....................................................................................12

14
*Hoeft v. Supreme Lodge Knights of Honor*
        113 Cal. 91 (1896) ..........................................................................................................5

15

16
*Laczko v. Jules Meyers, Inc.*
        276 Cal. App. 2d 293 (1969) .......................................................................................17

17

18
*Lewis & Queen v. N.M. Ball Sons*
        48 Cal. 2d. 141 ..............................................................................................................8

19

20
*Limandri v. Judkins,*
        52 Cal. App. 4th 326 (1997) .......................................................................................17

21

22
*Lovejoy v. AT & T Corp.*
        119 Cal. App. 4th 151 (2004) .....................................................................................17

23
*In re Marriage of O'Connell*
        8 Cal. App. 4th 565 (1992). .......................................................................................11

24

25
*Omaha Indemnity Co. v. Superior Court*
        209 Cal. App. 3d 1266 (1989) .....................................................................................10

26

27
*Orcutt v. Ferranini*
        237 Cal. App. 2d 216 (1967) ....................................................................................9, 10

28

*Quillian v. Lion Oil Company*
    96 Cal. App. 3d 156 (1979) ........................................................................8

*S. Bay Bldg. Enterprises, Inc. v. Riviera Lend-Lease, Inc.*
    72 Cal. App. 4th 1111 (1999) ....................................................................18

*SCC Acquisitions, Inc. v. Cent. Pac. Bank.*
    207 Cal. App. 4th 859 (2012) ....................................................................17

*Stenger v. Anderson*,
    66 Cal. 2d 970 (1967) ........................................................................ 7-9, 16

*Smith v. Bach*
    183 Cal. 259 (1920) ....................................................................................7

*Stonehocker v. Cassano*
    154 Cal. App. 2d 732 (1957) ......................................................................8

*Waters v. Conselho Supreme*
    38 Cal. App. 360 (1918) ..............................................................................6

*Wong v. Tenneco, Inc.*
    39 Cal. 3d 126 (1985) ..................................................................................7

*Wood v. Krepps*
    168 Cal. 382 (1914). ....................................................................................8

**FEDERAL CASES**

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009)......................................................................................4

*Barnes v. Windsor Securities, LLC*
    No. 13-cv-01878, 2013 WL 4426244 (N.D. Cal. August 15, 2013) ...................6, 10

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007)......................................................................................4

*Bullfrog Films, Inc. v. Wick*
    847 F.2d 502 (9th Cir 1988) ......................................................................13

*Cook, Perkiss and Liehe, Inc. v. Northern California Collections Serv. Inc.*
    911 F.2d 242 (9th Cir. 1990) ..................................................................4, 23

*Edwards v. Marin Park, Inc.*
    356 F.3d 1058 (9th Cir. 2004) ..................................................................16

*Erickson v. Pardus*
        551 U.S. 89 (2007)..............................................................................................4

*Falk v. General Motors Corp.*
        496 F.Supp.2d 1088 (N.D. Cal. 2007). .................................................16, 17

*Gladstone Realtors v. Village of Bellwood*
        441 U.S. 91 (1979)...........................................................................................13

*Heinrich v. Waiting Angels Adoption Services, Inc.*
        668 F.3d 393, 406 (6th Cir. 2012) ..................................................................19

*Lopez v. Smith*
        203 F.3d 1122 (9th Cir. 2000) ...................................................................4, 23

*Scott v. C.I.R.*
        374 F.2d 154 (9th Cir. 1967) ...........................................................................11

**<u>STATE STATUTES</u>**

Cal. Business and Professions Code § 17200 ...............................................13, 22

Cal. Civil Code § 1608.............................................................................................5

Cal. Civil Code § 1667.............................................................................................7

Cal. Civil Code § 1710 .......................................................................................... 16

Cal. Fam. Code § 760 .............................................................................................11

Cal. Ins. Code §§ 10113.1-10113.3 ................................................................. *passim*

Cal. Prob. Code § 5020...........................................................................................11

Cal. Welfare & Institutions Code §15600....................................................12, 22

**<u>FEDERAL STATUTES</u>**

Fed. Rule of Civil Procedure 9(b).............................................................16, 17, 19, 22

Fed. Rule of Civil Procedure 12(b)(6) ...................................................................4

## I.   **INTRODUCTION**

In his Motion to Dismiss Plaintiffs' Complaint For Failure to State a Claim (the "Motion"), Defendant James Earl Eby ("Eby") continues to incorrectly pare down both the parties and the claims brought against him in this matter.  While Defendant claims that it is Plaintiff Georgina Duggs' desire to receive $1.5 Million in life insurance proceeds from her late husband's insurance policy with MetLife (the "Policy"), in fact, it is her desire for her minor *children* to receive such.  Since the Life Settlement between Edward L. Duggs ("Decedent") and Eby was improperly made, and thus void per California law, the Trust is the proper beneficiary to the Policy proceeds.  And because Zane Duggs ("Zane") and Gemma Duggs ("Gemma"), the two minor children of Decedent and Plaintiff Georgina Duggs ("Georgina"), are the two beneficiaries of the Trust, they are also the proper recipients of the Policy proceeds.  This action is not about the greed of a widowed wife, but rather her desire to protect and provide for her two minor children who have already lost their father to cancer.

Despite Eby's arguments to the contrary, all Plaintiffs have proper standing to sue under the Claims brought forth in this Complaint.  The Trust is a vested beneficiary with a special right to challenge Eby's status as a purported owner and beneficiary of the Policy since the Life Settlement is void pursuant to the Insurance Code.  As well, Georgina, individually, has standing to sue due to her community property interest in the Policy under California law.

Furthermore, Defendant states in his introduction to the Motion that "Georgina's seven tenuous claims are all essentially based upon the baseless allegation that Defendant fraudulently influenced her ex-husband to enter into a 'life settlement contract[.]'"  Again, this summary is entirely flawed. Plaintiffs allegations are, instead, "essentially based" on the fact that the Life Settlement was improper, illegal and void, while each Claim in the Complaint alleges different reasons for why this is the case. "Fraud"—both statutory and common law—is only pled in Plaintiffs' Second Claim for Relief.

Moreover, Eby's arguments challenging Plaintiff's Second Claim are misguided and ill-informed:

First, as this Court has already noted in the hearing for the Motion for Preliminary Injunction, the Life Settlement (and accompanying change of beneficiary) between Decedent and Eby falls under the regulations of Insurance Code sections 10113.1-10113.3, and the protection such laws provide.

---

1   Thus, Plaintiffs have properly alleged that the Life Settlement is improper and void due to its failure to

2   adhere to the Insurance Code in numerous ways.  Second, Plaintiffs' Complaint states a proper claim

3   for common law fraud under the federal pleading standards and California's common law.

4          Finally, Eby makes no attempt to attack anything in this Motion except Plaintiffs' allegations of

5   fraud.  Thus, even if Defendant could show the Second Claim for Relief cannot survive a motion to

6   dismiss, Plaintiffs' other six Claims for Relief would all remain unchallenged and intact.

7          Thus, Plaintiffs request that the Court deny the Motion in its entirety.  Alternatively, should the

8   Court find any Claim lacking, Plaintiffs request that they be granted leave to amend the Complaint.

9                        **II.      STATEMENT OF FACTS**

10         In April of 1997, Decedent underwent surgery to remove a brain tumor resulting from cancer in

11   his right front lobe, and had the largest possible part of Decedent's brain removed without affecting

12   Decedent's functionality.  Eby was aware of Decedent's illness/condition and surgery during this time,

13   having been acquainted with and close friends with Decedent for more than twenty (20) years since

14   first meeting in grade school.  Compl., ¶13.

15         In 2002, Decedent and Plaintiff Georgina were married and first resided together in California.

16   Compl., ¶14.

17         On June 20, 2007, Decedent and Plaintiff Georgina executed the Trust as co-trustors in

18   Monterey, California, making both Decedent and Georgina trustees.  The beneficiaries of the Trust are

19   Georgina and her two minor children, Zane and Gemma Duggs.  Eby was made successor trustee to the

20   Trust.  Eby was also made executor of Decedent's estate, power of attorney and health care power of

21   attorney in fact advocate, as well as executor of Plaintiff Georgina's estate, power of attorney and

22   health care power of attorney in fact advocate.  Compl., ¶15.

23         In approximately July of 2010, Decedent purchased the MetLife Policy with death benefit

24   coverage of $1.5 Million, making the Trust the beneficiary of the Policy.  Compl., ¶16.

25         Also in 2010, Decedent's neurosurgeon confirmed a very diffuse recurrence and progression of

26   cancer in Decedent's brain and diagnosed Decedent with an inoperable brain tumor that had invaded

27   the internal capsule of the right medial thalamus.  Compl., ¶17.

28         In November of 2010, Decedent and Plaintiff Georgina moved to Omaha, Nebraska with Zane

---

Opposition to Motion to Dismiss – *Duggs, et al. v. Eby*- **No. 3:14-cv-03734-RS**          2

1    and Gemma for Decedent's cancer treatment and, in approximately February of 2011, Decedent

2    initiated chemotherapy treatment which included daily doses of slow-release morphine.  Compl., ¶18.

3         From 2010 until his death, Decedent's brain tumor worsened and increasingly altered the

4    psychological state of Decedent, causing severe changes in behavior and mood swings.  Throughout

5    this time, Decedent confided in Eby, his long-time acquaintance, about Decedent's terminal

6    condition/illness, his chemotherapy treatments and the severe mental and physical impact the

7    condition/illness and treatment had upon him.  Compl., ¶19.

8         Throughout 2012, Decedent's mental illness/condition continued to worsen.  Decedent's mental

9    mood swings, psychological instability and irrational behaviors increased to the point that, in December

10   of 2012, Decedent moved away from his wife and minor children and returned to California to be near

11   Decedent's brothers and Eby.  Compl., ¶20.

12        On January 5, 2013, Eby negotiated and "purchased" the Policy from Decedent in the form of a

13   life settlement transaction.  The Life Settlement contract is attached to the Complaint as Exhibit A and

14   states that Eby purchased the $1.5 Million Policy for a mere $250,000 (the "Life Settlement Contract").

15   *See* Compl., Exh. A.  Eby then arranged to change the beneficiary of the Policy to himself from the

16   Trust, which was then the beneficiary, so that once Decedent died (which, as noted, occurred on

17   December 8, 2013),  Eby would receive the death benefit proceeds of the Policy, thus depriving the

18   Trust of this sum.  The entire negotiation, purchase/sale and beneficiary transfer was executed,

19   witnessed by and known only to Eby and Decedent, alone.  Plaintiffs were not made aware of this

20   transaction until immediately before Decedent's death.  Compl., ¶21.

21        At the time of the attempted "sale" of the Policy via the Life Settlement, Eby made an initial

22   payment of $50,000 directly to Decedent with the remaining amount due at the time of Decedent's

23   death.  Compl., ¶22.

24        On December 8, 2013, Decedent passed away as a result of the cancer that had caused the brain

25   tumor.  Compl., ¶23.

26        Plaintiffs are informed and believe that in January of 2014, MetLife paid out the Policy death

27   benefits of $1.5 Million to Eby as beneficiary due to the attempted Life Settlement.  Compl., ¶24.

28        On January 30, 2014, Eby paid the remaining $200,000 by wire transfer to the "Edward Lee

---

1  Duggs, Jr. Trust," a second trust formed per the express instructions of the Life Settlement that named

2  only Zane and Gemma as beneficiaries.  This was a second, separate trust set up by Decedent and his

3  executor prior to Decedent's death for the express purpose of receiving the remaining balance owed by

4  Eby under the attempted Life Settlement Contract.  This second payment was made only after Eby

5  received the death benefit proceeds of the Policy, and was not made in a timely manner as required by

6  the Life Settlement.  Compl., ¶25.

7         On August 18, 2014, Plaintiffs sued Eby, alleging seven causes of actions, requesting, *inter alia*,

8  declaratory relief finding that the life settlement contract is illegal, recession of the contract because the

9  life settlement has no lawful objective, and the imposition of a constructive trust for the return of the

10  Policy proceeds to Plaintiffs.

11                          **III.    ARGUMENT**

12  **A.    Legal Standard for Motion to Dismiss.**

13         A complaint is sufficient under the federal rules if it gives the defendant "fair notice of what the

14  . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

15  (2007).  In fact, a court may not dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6)

16  when it contains enough facts to state a claim to relief that is plausible on its face.  *Id*. at 570.  Thus, in

17  evaluating a motion to dismiss, a court must begin its analysis "by taking note of the elements that

18  plaintiff must plead to state a claim[.]"  *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009).  Furthermore,

19  "[t]he federal rules eliminated the cumbersome requirement that a plaintiff set out in detail the facts

20  upon which he bases his claim."  *Twombly*, 550 U.S. at 556, n.3.

21         In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true

22  and construe them in the light most favorable to the plaintiff.  *See id*. at 550; *see also Erickson v.

23  Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir.

24  2007).

25         Finally, if a court does dismiss a complaint, it should grant leave to amend even if no request to

26  amend is made "unless it determines that the pleading could not possibly be cured by the allegation of

27  other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000), quoting *Cook, Perkiss and Liehe,

28  Inc. v. Northern California Collections Serv. Inc*. 911 F.2d 242, 247 (9th Cir. 1990).

---

**B.** **All Plaintiffs Have Proper Standing to Bring Before this Court all Claims as Presented in the Complaint.**

    **1.** **Georgina, as the Trustee of the Trust, Has Standing to Challenge the Beneficiary Designation Because the Trust Has Gained Vested Rights in the Policy Upon Decedent's Death.**

Contrary to Eby's assertion, Plaintiffs have pled plausible facts that the Trust has a vested right under the Policy, giving the Trust proper standing to challenge Eby's status as beneficiary (as well as owner). Granted, California has not historically allowed a former beneficiary under a life insurance policy to maintain a claim against the substituted beneficiary because the former beneficiary's interest is considered a mere expectancy of an incomplete gift that is revocable at the will of the insured. *Hoeft v. Supreme Lodge Knights of Honor*, 113 Cal. 91, 97 (1896). However, California has repeatedly allowed an exception for contingent beneficiaries to maintain claims once their mere expectancy develops into a vested right. *Cook v. Cook*, 17 Cal. 2d. 639, 646 (1941). In case of life insurance policies, the death of the insured transforms a contingent beneficiary's mere expectancy in the life insurance proceeds into a vested right. *Id.*

As Plaintiffs have alleged and Eby has admitted, the Life Settlement Contract between Eby and Decedent caused the change in beneficiary of Decedent's Policy: "There is no dispute that the Proposal agreement resulting in the change in beneficiary of the Decedent's life insurance policy was entered into only between Eby and the Decedent." Motion at 4; *see also* Compl., ¶21. Plaintiffs pled in their Complaint that this Life Settlement Contract is void because it failed to comply with the statutory regulation of Insurance Code sections 10113.1-10113.3, enacted to protect the vulnerable, sick and elderly such as Decedent. Compl., ¶¶63-66.

As a result, Plaintiffs have alleged that because the life settlement contract is statutorily void, the Trust was the lawful beneficiary at the time of Decedent's death. Compl., ¶67. Thus, Plaintiffs have pled in their Complaint plausible facts to assert that the Trust has a vested right in the Policy, giving the Trust standing to bring an action to determine the rightful benefits to the Policy's proceeds under California law.

///

///

---

i.   **California Cases Have Allowed Former Beneficiaries Standing To Maintain Claims Against a Substituted Beneficiary Where Acts Have Been Pled That Would Cause the Beneficiary Change to Be Deemed Void.**

Plaintiffs' position is well-supported by case law contrary to Eby's argument in the Motion. Eby cites *Dunn v. New York Life Insurance Co.* at length to support his argument that the Trust lacks standing to bring a claim for fraud, statutory or common law, against him.  46 Cal. App. 203, 205 (1920).  But *Dunn* is distinguishable because the plaintiff in *Dunn* did not allege that *the beneficiary change was procured through a legally <u>void</u> act*.

The plaintiff in *Dunn* did not allege statutory fraud, thus, *Dunn* has no bearing on a statutory fraud claim.  As well, the plaintiff in *Dunn* admitted that the owner of the policy was of sound mind and had the mental capacity when he changed the named beneficiary under the policy, which the court found significant.  In sum, the plaintiff in *Dunn* did not allege the act necessitating the change under the Policy to be a nullity, something that would have given the beneficiary a vested right under the Policy to sue for title to the insurance proceeds, which the Trust is pleading here.

This explanation—that a former/lawfully beneficiary pleading the change in beneficiary was procured by a void act has a vested right in the insurance policy upon the decedent's death—explains why courts in the past have allowed some former beneficiaries standing and others not.  For example, in *Waters v. Conselho Supreme*, a California appellate court upheld a judgment for a former beneficiary canceling a certificate naming a new beneficiary because the insured was mentally incapacitated at the time he made the change.  38 Cal. App. 360 (1918).  The court there stated that there [was] an abundance of evidence that [the owner] was permanently insane at the time of the change, and therefore incapable of making a valid designation of a beneficiary.  *Id*. at 364.

Further, this very Court also recently allowed a former beneficiary to maintain a claim for declaratory relief to determine the rightful beneficiary to life insurance proceeds in the face of a motion to dismiss.  *Barnes v. Windsor Securities, LLC*, No. 13-cv-01878, 2013 WL 4426244 (N.D. Cal. August 15, 2013).  There, the former beneficiary alleged a contract assigning the life insurance proceeds to a substituted beneficiary was procured by fraud and void, leaving him as the rightful beneficiary.  *Id*. at *3.  Although the case was not reported (and it is unclear to Plaintiffs whether standing was challenged), it is at least *illustrative* in showing <u>that an act changing a beneficiary which</u>

1    is legally void cannot deprive the former beneficiary standing to bring a claim to determine the rightful

2    beneficiary.

3        This point is supported further when viewed in context of California's codified contract law.

4    Civil Code section 1608 codifies the doctrine of illegality and provides that "[i]f any part of a single

5    consideration for one or more objects, or of several considerations for a single object, is unlawful, the

6    entire contract is void."  Civ. Code § 1608.  Under Civil Code section 1667, "unlawful" is broadly

7    defined as that which is contrary to an "*express provision of law*; *contrary to the policy of express law,*

8    *though not expressly prohibited; or, otherwise contrary to good morals*."  Civ. Code § 1667 (emphasis

9    added).

10        Once a contract is determined to be illegal and thus void, courts return the parties to their status

11   before the contract was made.  *Wong v. Tenneco, Inc.*, 39 Cal. 3d 126, 135 (stating "[n]o principle of

12   law is better settled than that a party to an illegal contract cannot come into a court of law and ask to

13   have his illegal objects carried out . . . .  Nor is this established rule limited in its application to parties

14   to the illegal transaction as distinguished from an attempt to set up a claim against a third party based

15   on the law's violation."  (Internal citations omitted)).

16        Accordingly, as long as Plaintiffs have pled plausible facts that the life settlement contract is

17   void, the Trust has a vested right under the Policy and standing to maintain this action.  Plaintiffs have

18   done so in the Complaint as shown below:

19
20        **ii.    Plaintiff has Pled Plausible Facts to Show Eby's Life Settlement Contract
        with Decedent is Statutorily Void.**

21        In California, the general rule is that a contract made in violation of a regulatory statute is void.

22   *Asdourian v. Araj*, 38 Cal 3d. 276, 289 (1985).  This rule stems from courts' past reluctant to enforce

23   illegal bargains to deter unlawful transactions.  *Stenger v. Anderson*, 66 Cal. 2d. 970, 977-78 (1967).

24   Although in each case the statute must be examined as a whole to ascertain whether it was the

25   intention that a contract should be deemed void (*Asdourian*, 38 Cal 3d. at 28), where it is manifest

26   from a reading of the entire act that the statute in question was passed for the protection of the public,

27   a contract made in violation of its terms should be held void (*Smith v. Bach*, 183 Cal. 259, 262

28   (1920)).

---

Opposition to Motion to Dismiss – *Duggs, et al. v. Eby*- **No. 3:14-cv-03734-RS**          7

1    This is particularly true for contracts that violate a statute prohibiting and criminalizing

2    contracts violating regulatory provisions.  *Id*. at 262; *see also Stonehocker v. Cassano*, 154 Cal. App.

3    2d 732, 736 (1957) (stating "[w]here a statute prohibits or attaches a penalty to the doing of an act, the

4    act is void even though the statute does not expressly pronounce it so[.]").  When the statute is

5    designed for the protection of the public, the penalty prescribed is the equivalence of the Legislature

6    expression of prohibition against the enforcement of contracts in violation thereof.  *Quillian v. Lion*

7    *Oil Company*, 96 Cal. App. 3d 156, 165 (1st Dist. 1979).

8        Moreover, the reasons for refusing to enforce an illegal agreement and deeming void are

9    particularly strong in cases where the statute invalidating a contract envisions the protection of a class

10   of persons from the unlicensed and unsupervised activities of another.  *See Lewis & Queen v. N.M.*

11   *Ball Sons,* 48 Cal. 2d. 141 (1957).  It is a well-settled rule in California that "when the object of the

12   statute or ordinance in requiring a license for the privilege of carrying on a certain business is to

13   prevent improper persons from engaging in that particular business, or is for the purpose of *regulating*

14   it for the protection of the public . . . , the imposition of the penalty amounts to a prohibition against

15   doing business without a license and a contract made by an unlicensed person in violation of the

16   statute or ordinance is void."  *Wood v. Krepps*, 168 Cal. 382, 386 (1914).

17       Illustrating this rule is the California Supreme Court case in *Stenger v. Anderson,* 66 Cal. 2d

18   970 (1967).  There, a plaintiff's executor was suing to rescind a life care contract allegedly in violation

19   of a state statute.  *Stenger*, 66 Cal. 2d at 971.  The statute required individuals to obtain from the state a

20   license and certificate before receiving a transfer of property from an aged person in return for a

21   contract to furnish life care.  *Id*. at 846-47.  The defendant failed to do so prior to entering into a life

22   care contract that gave her title to the elderly plaintiff's home.  *Id*. at 846.  The defendant then argued

23   the statute was designed to apply only to institutional care and not private home care.  *Id*. at 847.

24       The Supreme Court held the contract was void by statute.  *Id.* at 847.  The Court found that the

25   Legislature designed the statute to prevent the infliction of harm to the elderly public by those who are

26   not qualified to meet their needs, that to hold the statute applicable to only institutional care would

27   make the Legislature's licensing requirement exemption for close relatives superfluous, and that

28   permitting decedent to extract herself from this illegal agreement encouraged statutory compliance and

1   advance the statute's protective purpose.  *Id*. at 845-50.  The Court concluded: "In a materialistic

2   world, the Legislature has responded to the needs of the aged, who are ill-equipped to defend

3   themselves against commercial aggression, by sheltering them with statutory protection."  *Id*. at 851.

4       Similar to *Stenger*, the Legislature here has enacted a comprehensive regulatory scheme to

5   regulate life settlement contracts for the purpose to protect the vulnerable, sick and elderly public from

6   commercial aggression: Insurance Code sections 10113.1-10113.3.  A crucial part of this scheme was

7   to mandate individuals to become state licensed before entering into a life settlement contract.

8   Compl., ¶26.  Further, section 10113.2 states, "*no person* may enter into, broker, or solicit life

9   settlements pursuant to Section 10113.1 unless that person has been licensed by the commissioner

10  under this section."  Ins. Code § 1013.2(b)(1) (emphasis added); Compl., ¶26.  Further, a failure to

11  comply with any provision of the Life Settlement Act is deemed a misdemeanor, *including the failure*

12  *of meeting the licensing requirement*.  Ins. Code § 10113.2(t); Compl., ¶26.  Accordingly, since the

13  statue is designed to protect the public, and because the Legislature has criminally penalized an

14  individual for non-compliance, the Legislature has also determined that <u>a life settlement contract made</u>

15  <u>in violation of the statute is void</u>.

16      As Plaintiffs have alleged in their Complaint, Eby has failed to comply with the licensing

17  provisions required before entering into the Life Settlement with Decedent.  Compl., ¶¶27-28.  Eby

18  has not denied that he is not licensed to enter into life settlement contracts.  Thus, Eby's failure to

19  comply with the licensing provision makes the Life Settlement <u>statutorily void</u>.  Therefore, because

20  the life settlement contract is void, Plaintiffs have pled plausible facts that the Trust has gained a

21  *vested right* under the Policy at the time of Decedent's death and thus has standing to maintain this

22  action.

23      **2.   Georgina, on Behalf of the Trust has Standing to Bring a Claim for Recession of**

24          **Contract and/or Declaratory Relief as Vested Beneficiary.**

25      More specifically, California law recognizes that former beneficiaries have standing to bring an

26  action against a party for fraudulent misrepresentations in a contract that affects their interest under the

27  Policy.  *See Orcutt v. Ferranini*, 237 Cal. App. 2d 216 (1967).

28      Illustrative of this point is the case of *Orcutt v. Ferranini*.  There, a beneficiary of three

"surrendered" life insurance policies brought a reformation suit against the insurer. *Id.* at 217. The insured originally attempted to contract with the insurer to surrender one of his three insurance policies and take out loans against the other two. *Id.* at 218. However, the contract as written actually surrendered all three policies. *Id.* After the insured's death, the insured's wife and beneficiary of the policy, realized the insurer's actions and brought suit, claiming the insurer and its agents fraudulent misrepresented to her husband that only one insurance policy would be surrendered. *Id.* at 219-20. The insurer argued the beneficiary did not have standing. *Id.*

On appeal, the court held the beneficiary had standing, noting that *had the insurer not made fraudulent misrepresentations in the contract, the beneficiary would have had a vested interest in the policy proceeds,* "*and vested with such rights against the insurer as may be necessary to show the true tenor of the agreement under which [she] claims.*" *Id.* at 221-24. Thus, the beneficiary had a vested interest in the policy proceeds absent the fraudulent representations causing the insured to surrender the policies. *Id.* at 223.

Here, *Orcutt* is similarly applicable to support standing for rescission. Georgina, on behalf of the Trust, seeks to rescind the Life Settlement Contract based upon fraudulent omissions that displaced the Trust as beneficiary under the Policy. Compl., ¶69. Had the fraudulent Life Settlement not occurred, the Trust would have had a vested interest in the Policy. Thus, as in *Orcutt*, and as noted above, the Trust here is vested with the rights necessary to show the true tenor of the Life Settlement is fraudulent and, thus, seek rescission.

Georgina, on behalf of the Trust, also has standing to bring a claim of declaratory relief to have this Court determine the legitimacy of the Life Settlement and the subsequent rights of the parties. In *Omaha Indemnity Co. v. Superior Court*, beneficiaries of a general liability policy were allowed to sue for declaratory relief of their rights under the terms of the insurance policy. 209 Cal. App. 3d 1266 (1989). There, the owners of a home required renters to purchase a general liability insurance policy for the mutual benefit of landlord and tenant. *Id.* at 1269. After the insurer denied coverage for an oil spill, the owners of the home sued the insurer for a determination of coverage. *Id.* Though the insurer challenged the beneficiaries' standing, the appellate court upheld the trial court's decision finding standing for such *intended* beneficiaries. *Id.* at 1270; *see also Barnes v. Windsor Securities, LLC*, No.

13-cv-01878, 2013 WL 4426244 (N.D. Cal. August 15, 2013) (described above).

Here also, Georgina, on behalf of the intended and vested beneficiary of the Policy, *i.e.*, the Trust, has standing to sue for declaratory relief of its rights under the Policy and whether the Life Settlement contract has effectively altered such rights.

### 3. Georgina Duggs, Individually, Also Has Standing to Sue for the Claims of Declaratory Relief, Recession and Fraud Because of Her Community Property Interest in the Policy.

Under California community property law, "except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in [California] is considered community property."  Fam. Code § 760.  As well, both spouses ordinarily have a community interest in the proceeds of an insurance policy to the extent it was acquired with community funds.  *In re Marriage of O'Connell*, 8 Cal. App. 4th 565, 577 (1992).

Furthermore, "[a] policy of life insurance is a bundle of rights, of which the right (if any) to surrender the policy and receive the cash surrender value is but one.  The California cases, by repeated holdings and dicta, make it clear that the wife's community interest, like that of the husband, is in the contract, the entire bundle of right, not in just one or more of those rights."  *Scott v. C.I.R.*, 374 F.2d 154, 159 (9th Cir. 1967) (interpreting California law).

Accordingly, "[l]ife insurance proceeds are subject to the general rule that a spouse cannot dispose of community personal property without either the other spouse's written consent or consideration.  [Citation].  Thus, it is established that after the insured's death the surviving spouse can bring an action to set aside any unauthorized gift of insurance proceeds to the extent of his or her community interest, if this right has not been waived or released."  *In re Marriage of O'Connell*, 8 Cal. App. 4th at 578; *see also* Prob. Code § 5020.

As Plaintiffs have pled, Georgina and Decedent were married in 2002 and first resided together in California.  Compl., ¶14.  In approximately July of 2010, Decedent purchased the MetLife Life Insurance Policy with death benefit coverage of $1.5 Million *while still residing in California*, making the Trust the beneficiary of the Policy.  Compl., ¶16.  Thus, the Policy is considered community property of the Duggs' since the Policy was acquired during the marriage

while domiciled in California.

On January 5, 2013, Eby negotiated and "purchased" the Policy from Decedent in the form of a life settlement contract. Compl., ¶21. Plaintiffs, including Georgina, were not aware of this until immediately before his death. Compl., ¶21. Thus, Georgina never consented to the Life Settlement or waived her interest in the Policy. Accordingly, Georgina has standing to bring the necessary claims to set aside the Life Settlement, including declaratory relief, recession, and fraud—just as Decedent would if still alive—since she maintains ownership of the Policy per California's laws of community property.

**4.  Eby's Assertions That Only the "Personal Representative" of a Decedent May Sue and That He is the "Personal Representative" of Decedent are Both Incorrect.**

Eby argues that only the "personal representative" (or decedent's successor in interest where there is no personal representative) has standing to sue for any claims related to fraud or other harm committed upon a decedent. Motion at 8. Here, Eby states with no particularity as to which Claim for Relief Eby is directly addressing, but it can be assumed that he intended to challenge standing for all claims that involve fraud or other such harm. Regardless, as shown in detail above, such is not the case.

Moreover, the Complaint specifically alleges why standing is appropriate for each and every other claim alleged:

  o  For Plaintiffs' <u>Third Claim</u> for Financial Abuse to a Dependent Adult Pursuant to Welfare & Institutions Code §15600, *et seq*., standing has been properly pled and shown for all Plaintiffs to sue for financial abuse to Decedent as an "interested person" as defined by California Probate Code §48(a)(1) since the Decedent's personal representative, Lyndon Duggs, the brother of Decedent and executor of Decedent's estate, has refused to commence the action. Compl., ¶¶15 and 94-96. As well, the Trust is properly alleged to be the original and rightful beneficiary of the Policy with a property right in the Policy that may be affected by this present proceeding. Compl., ¶¶15 and 94; s*ee Estate of Lowrie*, 118 Cal. App. 4th 220 (2004). Further, where trust property is involved, the trustee is the real party in interest with standing to bring such a claim. And Georgina, individually, Zane and Gemma are all properly alleged to be beneficiaries of the Trust, with property rights in the Policy that may be affected by this present proceeding. Compl., ¶¶15 and 95-96; s*ee Estate of Lowrie*, 118 Cal. App. 4th 220 (2004);

o    For Plaintiffs' <u>Fourth Claim</u> for Breach of Fiduciary Duty, standing has been properly pled and shown for all Plaintiffs as either the trust or beneficiaries of a trust to challenge the trustee for conduct affecting their interests regarding a breach of fiduciary duty.  Compl., ¶¶15 and 109, citing *Estate of Giraldin*, 55 Cal.4th 1058 (2012).  Thus, all Plaintiffs have standing to sue Eby here for breach of his fiduciary duties to the Trust.  Also pursuant to *Estate of Giraldin*, the Complaint has noted that if the trust in question is no longer revocable due either to the incapacity of the settlor or the death of the settlor, the beneficiaries of said trust have the right to question the actions of the trustee for his conduct prior to the death where that conduct harmed the now-vested interests of the beneficiaries.  Compl., ¶¶110, citing *Estate of Giraldin*, 55 Cal.4th 1058 (2012).  Because of the death of Decedent, the Trust is no longer revocable and, thus, Georgina, Zane and Gemma all have the right to sue Eby, a successor trustee of the Trust at the time, for breach of his fiduciary duty to the Trust committed prior to the death of Decedent.  Compl., ¶¶23 and 110;

o    For Plaintiffs' <u>Sixth Claim</u> for Unfair Competition Pursuant to Business & Professions Code §17200, *et seq*., standing has been properly pled and shown for all Plaintiffs since each sustained "an injury in fact and [have] lost money or property as a result of such unfair competition" on the part of Eby.  Compl., ¶¶, 21, 24 and 127; Cal. Bus. & Prof. Code §17204.  The Trust sustained injury as the original and intended beneficiary of the Policy.  Georgina, Zane and Gemma all sustained injury as the beneficiaries to the Trust as a result of the unfair competition of Eby.  Compl., ¶¶15 and 127;

o    Finally, regarding the <u>Seventh Claim</u> for Constructive Trust, the Complaint has properly pled standing for Georgina to sue for a remedy of a constructive trust on behalf of the Trust, based on her standing to sue for such claims as noted above that would allow her such a remedy.  *See* Compl., ¶135.

Furthermore, from a public policy standpoint, Eby's argument that only the "personal representative" would have standing here is illogical and legally impossible.  Standing generally requires a showing that plaintiff has suffered actual loss, damage or injury, or is threatened with impairment of his or her own interests.  *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979); *Bullfrog Films, Inc. v. Wick*, 847 F.2d 502, 506 (9th Cir. 1988).  But here in this type of situation, the estate has suffered *no injury* nor has it any interest in the policy's beneficiary proceeds upon the owner's death since the beneficiary is not the owner/decedent.  Thus, the estate and/or the "personal representative" of the estate would actually be the party *without* standing.  In fact, <u>*only*</u> the intended and proper beneficiary would have suffered injury here.  Thus, logically, the intended and proper party to bring such a claim is the intended and proper beneficiary.

---

Finally, while providing no citation to the Complaint, Eby makes the very odd comment that "Plaintiffs acknowledge that the Defendant is the personal representative of the [Decedent], and has been for quite some time."  Motion at 8.  In truth, Plaintiffs have not ever alleged that Eby is currently the personal representative of Decedent.[1]  In fact, based on the knowledge and information available to Plaintiffs to date, Plaintiffs assert that Eby's statement is simply not true: Eby is currently *not* the personal representative of Decedent, and, in fact, relinquished that fiduciary role to Decedent's brother, Lyndon Duggs, shortly after Decedent's death.[2]  Thus, Plaintiffs are at a loss as to why Eby would argue such when Eby is the party most knowledgeable about such a renunciation.

**C.** **The Complaint Properly Pleads Plaintiffs' Second Claim for Relief for Statutory Fraud Pursuant to Insurance Code sections 10113.1-10133.3 Since the Insurance Code Regulates Eby's Life Settlement Contract with Decedent.**

Despite Eby's wishes to the contrary, Insurance Code sections 10113.1-10113.3 ***regulate private sales of life insurance policies between close friends***.  Eby here has attempted to avoid California's comprehensive statutory scheme for life settlement transactions protecting insureds by simply arguing he is not a "provider" under the statutory scheme and is, instead, a "purchaser."  His argument is unfounded and blatantly misinforms this Court.

<u>First</u>, a life settlement contract is defined as:

> a written agreement solicited, negotiated, or entered into in this state between a "provider" and an owner, establishing the terms under which compensation or any thing of value will be paid . . . in return for the owner's assignment, transfer, sale, devise, or bequest of the death benefit or any portion of an insurance policy.

---

[1]  Instead, the Complaint merely states that Eby was "*made*" successor trustee to the Trust, executor of Decedent's estate, power of attorney and health care power of attorney in fact advocate, as well as executor of Georgina's estate, power of attorney and health care power of attorney in fact advocate. Compl., ¶15.  The Complaint clearly states all such designations were done in the past.

[2]  Nonetheless, should Eby wish to admit the "fact" that he is still the personal representative of Decedent, it would only serve to strengthen Plaintiffs' argument as to their Fourth Claim for Breach of Fiduciary Duty.  Not only did Eby attempt to transact with Decedent to purchase the Policy and receive the death benefits while *successor* trustee to the Trust and *eventual* executor to Decedent's estate (after death), but if Eby's admission were actually true, he would have also received the $1.5 Million in death benefits (thereby taking away such funds from the Trust and Decedent's minor children) while *actually* the trustee of the Trust and executor to Decedent's estate.

Ins. Code § 10113.1(k).

The statute states a "provider" is "a person, other than an owner, who enters into or effectuates a life settlement contract with an owner."  Ins. Code § 10113.1(r).  Here, this is Eby.

Meanwhile, a "purchaser" is exempt from these regulations.  Ins. Code § 10113.1(r)(4). Obviously for this reason, Eby had attempted to argue he is a "purchaser" under the statute, quoting the statute but ***conveniently omitting the full definition* of "purchaser."**  Eby states a "purchaser" is:

> a person who pays compensation or anything of value as consideration . . . for the assignment, transfer, or sale of, an ownership or other interest in a life insurance policy . . . .

Motion at 11, citing Ins. Code § 10113.1(s).

However, the ***full*** definition in the statute states a "purchaser" is, instead:

> a person who pays compensation or anything of value as consideration for a beneficial interest in a trust which is vested with, or for the assignment, transfer, or sale of, an ownership or other interest in a life insurance policy or a certificate issued pursuant to a group life insurance policy ***which has been the subject of a life settlement contract***.

Ins. Code § 10113.1(s) (emphasis added).

As shown above, Eby has quite conveniently and deceptively omitted the last phrase of the statute from his Motion, distinctly and erroneously modifying the definition.  A "purchaser" is actually one who buys an interest in insurance policies <u>which has already been the subject of a settlement contract</u>.  In other words, a "purchaser" is a *secondary* buyer of an interest in a life settlement contract some time "down the road" after the original owner has already long-sold the policy.

<u>Second</u>, under the Code's definition of "life settlement contract," it specifically names types of transactions the statutory schemed did not intend to regulate, although Eby's transaction with Decedent is not one of them.  The statute states:

> "Life settlement contract" does not include any of the following:
> ****
> (E) An agreement where all of the parties satisfy one of the following conditions:
> (i) They are closely related to the insured by blood or law.
> (ii) They have a lawful substantial economic interest in the

---

continued life, health, and bodily safety of the person insured.

Ins. Code § 10113.1(k).

The Legislature has made specific exceptions for life settlement contacts between insured and close relatives, and for any individual who has a strong economic interest in the continued existence of the insured, *but it did not exempt a "childhood friend" who was purportedly financially assisting the insured*.  In fact, an exemption of this kind would effectively render the two *actual* exemptions listed above meaningless and superfluous.  *See Stenger*, 66 Cal. 2d at 848.  Accordingly, the Life Settlement between Eby and Decedent is subject to the Insurance Code's regulations (and thus, Eby's failure to comply with it makes the contract statutorily void).

**D.**    **The Complaint Properly Pleads Plaintiffs' Second Claim for Relief for Common Law Fraud in California Pursuant to the Federal Standards.**

Eby erroneously states that the Complaint does not satisfy the pleadings standards for common law fraud.  The Federal Rules of Civil Procedure states:  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. Proc. Rule 9(b).  The Rule requires that the complaint provide the circumstances constituting the fraud, including the time, place and manner of each fraud, plus the role of each defendant in each scheme.  *Edwards v. Marin Park, Inc.,* 356 F.3d 1058, 1066 (9th Cir.2004) (citation omitted).  However, in the context of a fraudulent omission claim, a plaintiff cannot plead a specific time or place of a failure to act and may accordingly plead fraud in alternative ways.  *Falk v. General Motors Corp.,* 496 F.Supp.2d 1088 (N.D. Cal. 2007).

California Civil Code section 1710 specifies four kinds of deceit, one of which is "[t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact[.]"  Civ. Code §1710.

Here, Plaintiffs' common law fraud claims are entirely based on allegations that Eby made *omissions* and *concealments* that are both grounded in fraud.  Further, Plaintiffs' claim of fraudulent satisfies both the federal requirements at this pleading stage for either fraudulent omission or fraudulent concealment.

"[W]hen the defendant actively conceals a material fact from the plaintiff," a failure to disclose that fact can be actionable. *Limandri v. Judkins,* 52 Cal. App. 4th 326, 337 (1997). To state a claim for active concealment, a plaintiff must plead the following five elements: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage. *Boschma v. Home Loan Center, Inc.*, 198 Cal.App.4th 230, 248 (2011). The necessary elements for a fraudulent omission claim are essentially the same as for fraudulent concealment. *Compare Lovejoy v. AT & T Corp.,* 119 Cal.App.4th 151, 157 (2004) *with SCC Acquisitions, Inc. v. Cent. Pac. Bank.,* 207 Cal. App.4th 859, 863, (2012).[3] And as noted, while claims for fraud must be pled at a heightened standard of specificity per FRCP 9(b), because a plaintiff bringing fraud by omission claims "will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim," plaintiffs may plead fraud by omission by alternative means. *Falk,* 496 F.Supp. 2d at 1098–99.

### 1.     First, the Complaint Properly Alleges That Eby Concealed or Suppressed a Material Fact to Both Decedent and Plaintiffs.

Statutes have long been used in California to establish the elements of common law causes action. *Crusader Ins. Co v. Scottsdale Ins. Co.*, 54 Cal. App. 4th 121, 125. (1997). In such cases, the statute is not necessarily interpreted as creating a new private right to sue, but rather serves the "subsidiary function of providing evidence of an element of a pre-existing common law cause of action . . . ." *Id.* Similar to negligence *per se,* courts have used violations of civil and criminal statutes as evidence in determining an element of common law fraud. *Id.*; s*ee e.g.*, *Laczko v. Jules Meyers, Inc.* 276 Cal. App. 2d 293 (1969) (violating vehicle code prohibiting rolling back an odometer

---

[3] To plead fraud by omission under California law, a plaintiff must show (1) the concealment or suppression of material fact, (2) a duty to disclose the fact to the plaintiff, (3) intentional concealment with intent to defraud, (4) justifiable reliance, and (5) resulting damages. *SCC Acquisitions,* 207 Cal. App. 4th at 863.

evidence of fraudulent misrepresentation); *S. Bay Bldg. Enterprises, Inc. v. Riviera Lend-Lease, Inc*., 72 Cal. App. 4th 1111, 1123 (1999) (holding plaintiff may rely on statutes regulating mortgages to establish common law fraud action).

Under the Insurance Code, a fraudulent life settlement act includes "transact[ing] the business of life settlements in violation of laws requiring a license, certificate of authority, or other legal authority for the transaction of the business of life settlements" in the furtherance of a fraud, or to prevent the detection of a fraud.  Ins. Code § 10113.1(g)(2)(C).

**To Decedent:**

The Complaint alleges that "EBY concealed the fact that Decedent must be of a sound mind to enter into the transaction, that certain forms and other disclosures were necessary under the Insurance Code . . . and that Decedent must be evaluated by a physician prior to entering into the Life Settlement."  Compl., ¶74.  The Complaint also alleges such concealments as material.  *See* Compl., ¶76.  Thus, the Complaint properly alleges that Eby concealed or suppressed a material fact from Decedent.  Further, such concealed facts, which were requirements under the Insurance Code, satisfy this element of common law fraud under *Crusader Ins. Co.*, 54 Cal. App. 4th at 125.

**To Plaintiffs:**

The Complaint alleges that "EBY concealed from Plaintiffs the true financial circumstances and other disadvantages to Decedent and Plaintiffs if the Policy with death benefits valued at $1.5 Million was sold to EBY for a mere $250,000."  Compl., ¶74.  The Complaint also alleges such concealments as material.  *See* Compl., ¶76.  Thus, the Complaint properly alleges that Eby concealed or suppressed a material fact from Decedent.

## 2. Second, the Complaint Properly Alleges That Eby Was Under a Duty to Disclose the Material Fact to Both Decedent and Plaintiffs.

**To Decedent:**

The Complaint alleges that Eby built a relationship of trust and confidence, as well as a fiduciary relationship with Decedent.  Compl., ¶¶15 and 73.  As a person in which Decedent confided, Eby knew of Decedent's history with brain cancer.  Compl., ¶73.  The Complaint also states that he knew of Decedent's physical and mental condition at the time of the Life Settlement caused by the

"reoccurrence of cancer that had caused an inoperable and wide-spread brain tumor" and that Decedent was also "undergoing chemotherapy and daily doses of slow-release morphine, which all triggered a severe mental condition for Decedent that cause seizures and severely altered his mood, personality, perception of reality, and ability to function or make decisions in a normal cognitive manner, made him easily confuse, and not mentally alert so that he could understand and comprehend financial matters and make decisions on his own behalf and on behalf of the Trust.  *Id*.  All of these facts as alleged in the Complaint show that Eby was under a duty to disclose the regulations that must be followed under Insurance Code sections 10113.1-10113.3, especially the special requirements for life settlement involving a terminally ill policy owner, since such requirements could have *never* been satisfied in this instance.

**To Plaintiffs:**

The Complaint alleges that Eby also a fiduciary relationship to Plaintiffs: to the Trust as a successor trustee (Compl., ¶15), to Georgina, individually, as executor to her estate, power of attorney and health care power of attorney in fact advocate (*id.*) and to Zane and Gemma, the beneficiaries of the Trust, to which Eby was a successor trustee (*id.*).  Thus, the Complaint properly alleges that he owed a duty to Plaintiffs to disclose a material fact, namely here, the implications of the Life Settlement upon their interests as co-trustor and co-owner of the Policy (Georgina), beneficiary of the Policy (the Trust) and beneficiary of the Trust (Zane and Gemma).

### 3. Third, the Complaint Properly Alleges That Eby Intentionally Concealed or Suppressed the Fact With the Intent to Defraud both Decedent and Plaintiffs.

For "intent," the Federal Rules allows a more relaxed standard for proper pleading: "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged *generally*."  Fed. R. Civ. Proc. Rule 9(b) (emphasis added).  All that is necessary is a showing of sufficient factual context to render a finding as to intent *plausible*.  *Heinrich v. Waiting Angels Adoption Services, Inc.*, 668 F.3d 393, 406 (6th Cir. 2012).

**To Both Decedent and Plaintiffs:**

To satisfy the element of intent, the Complaint shows the scheme and motive of Eby for conceal or suppress the applicable requirements of the Insurance Code:  Eby sought to deprive Decedent (and

all Plaintiffs) from their interest in the Policy to receive the $1.5 Million in death benefits.  Compl., ¶¶21 and 81.  Beyond hiding these requirements from Decedent, Eby also "made no attempt to involve anyone [else] besides Decedent [in the] drafting or execution of the Life Settlement."  Compl., ¶75.  Eby "concealed the Life Settlement [and all related requirements] from Decedent's financial advisor(s) [James Mader], Decedent's spouse [Georgina] . . . and all of Decedent's other close relatives  and friends [including Lyndon Duggs, the eventual executor of the estate and personal representative of Decedent] from the details of the . . . Life Settlement[.]"  Compl., ¶75.  Further, the facts "were concealed intentionally or in reckless disregard for their truth" (Compl., ¶77) and were concealed to "influence Decedent to sell the Policy to EBY via the Life Settlement" (Compl., ¶78), especially while knowing that "Decedent was peculiarly susceptible to the influence of Defendant EBY (Compl., ¶78).  Thus, Eby's scheme and intent has been generally alleged more than sufficient to render a finding as to his intent to defraud both Decedent and all Plaintiffs plausible.

> **4.      Fourth, the Complaint Properly Alleges That Both Decedent and Plaintiffs Were Unaware of the Fact and Would Not Have Acted As He/They Did If He/They Had Known of the Concealed or Suppressed Facts.**

**To Decedent**:

As noted prior, the Complaint alleges that Eby concealed from Decedent the material facts that 1) Decedent must be of sound mind to enter into the transaction, 2) certain forms and other disclosures were necessary under the Insurance Code, and 3) Decedent must be evaluated by a physician prior to entering into the Life Settlement.  Compl., ¶74.  None of these requirements were met.  Compl., ¶¶35-46.

Further, the Life Settlement Contract (incorporated into the Complaint as Exhibit A) also shows that Decedent was unaware of all such requirements, since none were listed or referenced in the contract, despite Decedent's other attempts to abide by the regulations set forth for life settlements.  *See* Exhibit A to the Complaint.  In fact, Decedent, as the alleged drafter of the Life Settlement (*see* Compl., Exh. A, pg. 1), goes to great lengths to provide information regarding his life insurance broker's (James Mader) information (Compl., Exh. A, pg. 5), *but nowhere does it show Mr. Mader's actual involvement* as is necessary per Insurance Code sections 1631, 10113.1 and 10113.2(b)(1).

---

Finally, it is clear in the language of the Life Settlement that Decedent, as the alleged drafter of the Life Settlement, intended for the agreement to be proper and binding. It states that "[a]s the policy owner, I will sell my life insurance policy to an individual or a company in exchange for cash. The new owner will keep the policy in force . . . and reap a significant ROI by receiving the death benefits when I die." Compl., Exh. A, pg. 5.

Thus, for all these reasons, the Complaint has properly pled the necessary facts to show that Decedent was unaware of the material fact hid by Eby that numerous (other) requirements were necessary to effectuate a proper sale of an insurance policy via a life settlement.

**To Plaintiffs:**

If it is not intuitively obvious that Plaintiffs were not aware of the fact that Eby was attempting to purchase the Policy and take the death benefits of such as beneficiary, then the Complaint clearly states it, regardless: "The entire negotiation, purchase/sale and beneficiary transfer was executed, witnessed by and known only to Defendant EBY and Decedent, alone. Plaintiffs were not made aware of this transaction until immediately before Decedent's death." Compl., ¶21. Further, it is obvious that should Plaintiffs have known about it, they would have been able to bring it to the attention of either the Decedent prior to his death (and/or the 15 day rescission period per Insurance Code section 10113.2(d)) or the insurer prior to the date the death benefits were issued to Eby. Thus, this element of fraud is also properly pled for Plaintiffs.

5.      **Fifth and Finally, the Complaint Properly Alleges That Decedent and Plaintiffs Sustained Damage as a Result of the Concealment or Suppression of the Material Fact.**

**To Decedent:**

The Complaint alleges that Decedent sustained damage in that he was deprived of the ownership of the Policy at the time of the Life Settlement. Compl., ¶¶74, 78-79. Further, it follows that because of the Life Settlement, Decedent was also deprived of any later ability to sell the Policy, change the beneficiaries, or allow the original and intended beneficiaries to receive their proper share. Compl., ¶79. Thus, the Complaint properly alleges that Decedent sustained damage as a result of the concealment or suppressions by Eby.

**To Plaintiffs:**

The Complaint alleges that "[a]s a direct and proximate result of this wrongdoing by Defendant EBY, Plaintiff GEORGINA as Trustee on behalf of the TRUST has suffered damages plus attorneys' fees for bringing this action and righting the wrongs that are described herein and which have been committed by Defendant, all of which are compensable in a case of this kind." Compl., ¶80; *see also* Compl., ¶79.  Likewise, Zane and Gemma have been deprived of the proceeds of the Policy as beneficiaries of the Trust.  (Compl., ¶¶9, 15 and 79).  Finally, as part owner of the Policy as community property, Georgina, individually, has also been deprived of her property right in the Policy.  Thus, the Complaint properly alleges that Plaintiffs sustained damage as a result of the concealment or suppressions by Eby.

Thus, since it is has been shown that the Complaint states with particularity the circumstances constituting fraud, the federal requirements under FRCP Rule 9(b) have been satisfied here.  Further, the Complaint satisfactorily pleads the necessary elements of a claim for fraudulent concealment or fraudulent omission under California law.  *See Boschma,* 198 Cal.App.4th at 248.  Therefore, Plaintiffs claim for common law fraud withstands Eby's challenge in this Motion.

**E.     Plaintiffs' First, Third, Fourth, Fifth, Sixth and Seventh Claims For Relief Are Not Challenged by Eby in This Motion and, Thus, Remain.**

As already noted in this Opposition, Eby is wholly mistaken regarding whether the "gravamen" of the Complaint is based on fraud.  In fact, Claim 3 for Financial Abuse of a Dependent Adult under California Welfare and Institutions Code sections 15600, *et seq*, is based on undue influence, *not fraud*. Similarly, Claim 4 for Breach of Fiduciary Duty in no way requires fraud or any allegations of such. Claim 5 for Rescission is based on illegality (Civil Code sections 1550 and 1598) pursuant to Insurance Code sections 10113.1-10113.3, incapacity (Civil Code section 1556) based on unsound mind, and unconscionability also based on unsound mind, *again all not fraud*.  And finally, Claim 6 for Unfair Competition under California Business and Professions Code sections 17200, *et seq*, is also based on statutory violations of the provisions of the Insurance Code beyond fraud.  Thus, *even if* Eby theoretically could show that Plaintiffs have not properly plead statutory fraud or common law fraud, each of these other Claims for Relief rely on allegations completely outside of fraud.  Thus, because

1  this Motion argues no substantive challenge to any of these Claims, all such Claims remain.

2  **F.** **Should the Court Dismiss Any Claim For Relief By Eby's Motion, Plaintiffs Should Have**
3  **a Right to Amend Such Claim(s).**

4      Nonetheless, as noted above, if a court does dismiss the complaint or any particular claim in a

5  complaint, it should grant leave to amend even if no request to amend is made "unless it determines

6  that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d

7  1122, 1127 (9th Cir. 2000), quoting *Cook, Perkiss and Liehe, Inc. v. Northern California Collections*

8  *Serv. Inc*. 911 F.2d 242, 247 (9th Cir. 1990).

9      Here, despite the fact that Plaintiffs have shown, *supra*, that none of the seven Claims for Relief

10  should be dismissed, if the Court should disagree, the Court should allow Plaintiffs the opportunity to

11  cure the their Complaint by granting leave to amend.

12                          **IV.    CONCLUSION**

13      For all the above-stated reasons, this Court should deny Defendant Eby's Motion to Dismiss in

14  its entirety.  Alternatively, should the Court grant any part of the Motion to Dismiss, Plaintiffs request

15  leave to amend the Complaint.

16

17  Dated: September 24, 2014                     Respectfully submitted,

18

19                                      KORNBLUM, COCHRAN,
                                        ERICKSON & HARBISON, LLP
20
                                        /s/ Nicholas J. Peterson
21                                          Nicholas J. Peterson, #287902

22                                      /s/ Timothy J. Lepore
23                                          Timothy J. Lepore, #294247

24

25

26

27

28