GUY O. KORNBLUM (SBN 39974)
WALTER G. CRUMP (SBN 203743)
NICHOLAS J. PETERSON (SBN 287902)
KORNBLUM, COCHRAN,
ERICKSON & HARBISON, LLP
1388 Sutter St., Suite 820
San Francisco, CA 94109
Telephone: (415) 440-7800
Facsimile: (415) 440-7898

Attorneys for Plaintiffs, GEORGINA R. DUGGS, Individually and as Trustee of the EDWARD & GEORGINA DUGGS LIVING TRUST; ZANE DUGGS and GEMMA DUGGS, minors, by GEORGINA R. DUGGS, their natural guardian

DAVID P. BEITCHMAN (SBN 198953)
ANDRE BONIADI (SBN 266412)
BEITCHMAN & ZEKIAN, P.C.
16130 Ventura Blvd., Suite 570
Encino, CA 91436
Telephone: (818) 986-9100
Facsimile: (818) 986-9119

Attorneys for Defendant, JAMES EARL EBY.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO**

| | |
|---|---|
| GEORGINA R. DUGGS, Individually and as Trustee of the EDWARD & GEORGINA DUGGS LIVING TRUST; ZANE DUGGS and GEMMA DUGGS, minors, by GEORGINA R. DUGGS, their natural guardian, <br><br> Plaintiffs, <br><br> v. <br><br> JAMES EARL EBY, <br><br> Defendant. | Case No.: 3:14-cv-03734 <br><br> **JOINT CASE MANAGEMENT STATEMENT** <br><br> Date: November 13, 2014 <br> Time: 1:30 p.m. <br> Courtroom: 3, 17th Floor <br><br> Complaint Filed: August 18, 2014 |

///

///

///

///

JOINT CASE MANAGEMENT STATEMENT –
*Duggs, et al. v. Eby*- No. 3:14-cv-03734-RS  0

The parties to the above-entitled action jointly submit this JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER pursuant to the Standing Order for All Judges of the Northern District of California dated July 1, 2011 and Civil Local Rule 16-9.

## 1. Jurisdiction & Service

This Court has original jurisdiction over Plaintiffs' claims for relief pursuant to 28 U.S.C. § 1332 in that the amount in controversy exceeds $75,000 and the action is between citizens of different States. Plaintiffs GEORGINA, ZANE and GEMMA DUGGS are all individuals residing in the State of Nebraska. Defendant JAMES EBY is an individual residing in the State of California. No issues exist regarding personal jurisdiction or venue. All parties have been served and have appeared.

## 2. Facts

**Plaintiffs' Statement of Facts**: In April of 1997, Decedent underwent surgery to remove a cancerous brain tumor from his right front lobe, and had the largest possible part of his brain removed without affecting functionality. EBY was aware of Decedent's illness/condition and surgery, having been a friend of Decedent's for more than 20 years.

In 2002, Decedent and GEORGINA were married and resided together in California. On June 20, 2007, Decedent and GEORGINA executed the TRUST as co-trustors in California, making Decedent and GEORGINA co-trustees. The beneficiaries of the TRUST are GEORGINA and her two minor children, ZANE (11 years old) and GEMMA (9 years old). EBY was made successor trustee to the TRUST. EBY was also made executor of both GEORGINA's and Decedent's estate, power of attorney and health care power of attorney in fact advocate, respectively.

In approximately July of 2010, Decedent purchased a MetLife Investors USA Insurance Company life insurance policy No. 210 227 420 USU ("the Policy") with death benefit coverage of $1.5 Million, making the TRUST the beneficiary.

Also in 2010, Decedent's neurosurgeon confirmed a very diffuse recurrence and progression of cancer in Decedent's brain, diagnosing him with an inoperable brain tumor.

In November of 2010, Decedent and GEORGINA moved to Omaha, Nebraska with ZANE and GEMMA for cancer treatment and; in approximately February of 2011, Decedent began chemotherapy treatment that included daily doses of slow-release morphine. From 2010 until his death, Decedent's

1  brain tumor worsened and increasingly altered the Decedent's psychological state, causing severe
2  changes in behavior and mood swings.  Throughout this time, Decedent confided in EBY about his
3  terminal condition/illness, his chemotherapy treatments and the severe mental and physical impact the
4  illness/condition and treatment had upon him.

5  Throughout 2012, Decedent's mental illness/condition worsened.  Decedent's mental mood
6  swings, psychological instability and irrational behavior increased to the point that Decedent moved
7  away from his family and back to California in December of 2012.

8  On January 5, 2013, EBY negotiated and "purchased" the $1.5 Million Policy from Decedent in
9  the form of a life settlement transaction for a mere $250,000 ("the Life Settlement").  EBY then
10 changed Policy beneficiary to himself from the TRUST, the original beneficiary, so that once Decedent
11 died, EBY would receive the proceeds of the Policy, depriving the TRUST of this sum.  The entire
12 negotiation, purchase/sale and beneficiary transfer was executed, witnessed by and known only to EBY
13 and Decedent; Plaintiffs were not aware of the transaction until immediately before Decedent's death.
14 At the time of the attempted Life Settlement, EBY made an initial payment of $50,000 to Decedent
15 with the remaining amount due at Decedent's death.

16 On December 8, 2013, Decedent passed away from the brain cancer.  In January of 2014,
17 MetLife paid EBY the Policy death benefits of $1.5 Million as the alleged beneficiary.

18 On January 30, 2014, EBY paid the remaining $200,000 by wire transfer to a second, separate
19 trust formed per the instructions of the Life Settlement, making ZANE and GEMMA beneficiaries
20 formed with the express purpose of receiving the remaining balance owed by EBY under the attempted
21 Life Settlement.  This second payment was made only after EBY received the death benefit proceeds of
22 the Policy, and was not made in a timely manner as required by the Life Settlement.

23 **Defendant's Statement of Facts**:  This matter arises from Plaintiff Georgina's desire to receive
24 a $1.5 Million in life insurance proceeds for a life insurance policy on the life of her ex-husband to
25 which Plaintiffs are neither owners nor beneficiaries, and have no vested interest in.  Plaintiffs claim
26 that Defendant unduly influenced her ex-husband to enter into a "life settlement contract" in exchange
27 for a beneficiary change resulting in the removal of the Trust as beneficiary.

28 Contrary to Plaintiff's manipulative depiction, Plaintiff and Decedent had long been estranged

JOINT CASE MANAGEMENT STATEMENT –                                                                                    2
*Duggs, et al. v. Eby*- No. 3:14-cv-03734-RS 2

1  and were engaged in a heated divorce during the last two years of the Decedent's life.  Plaintiff was the
2  Petitioner in that divorce, and both parties filed for separate domestic abuse restraining orders.  In
3  reality, Plaintiff abandoned and neglected her ill husband during the height of his cancer, interfered
4  with Decedent's attempts to spend time with his children during his final days, and constantly
5  attempted to take advantage of him.

6  Defendant and Decedent have been close friends for more than twenty seven years since first
7  meeting in middle school.  Decedent frequently consulted Defendant with his private and personal
8  matters.  As a result of the mutual trust between them, Defendant was blind copied on virtually every
9  correspondence between the Decedent and his doctors, lawyers as well as Plaintiff.  Based on such trust
10 and friendship, and in the midst of their divorce, Decedent appointed Defendant as his fiduciary with
11 the Dept. of Veterans Affairs, and named Defendant as his personal representative and trustee.

12 After being diagnosed with a brain tumor in 2010, Decedent moved to Nebraska to begin his
13 cancer treatment.  Since the relationship with Georgina became more alienated, Decedent had been
14 contemplating his relocation to California where his best friend and his two brothers reside.  Initially
15 after Plaintiff filed for divorce, Decedent chose to stay in Nebraska in an effort to see his two children,
16 however, once Plaintiff became uncooperative and prevented Decedent from such visitation, Decedent
17 decided to move back to California to be near his support system of close friends and family.

18 When Decedent first moved back to California, Defendant insisted that Decedent stay with him.
19 Decedent agreed and listed Defendant as his emergency contact in all of his correspondence with
20 doctors and lawyers.  Upon hearing that the Decedent was in financial distress and had trouble paying
21 his surmounting medical bills associated with his cancer treatments, as his close friend Defendant was
22 willing and ready to assist him in any way he could, including financially.

23 Around the same time, and as a result of Defendant's financial, emotional and physical support
24 of the Decedent, Decedent expressed to Defendant that there was no other way he knew of that he could
25 repay Defendant for his assistance and for his gratitude.  Accordingly, the Decedent suggested an
26 agreement in connection with the transfer of the beneficial interest in his Policy, to be certain it would
27 be contractually bound, and to prevent any third party from seeking to unwind Decedent's intentions.
28 Decedent himself, again of sound mind and clear intentions, drafted a proposal memorializing his

wishes in connection with the transfer of the Policy. Defendant was to make a payment of $50,000 up front to help Decedent with this financial troubles, with a subsequent payment of $200,000 to be made to the "Edward Lee Duggs, Jr. Trust," a second trust that named Decedent's children as beneficiaries.

Thus, in accordance with terms of the Policy and based upon said agreement, Decedent, in sound mind and at his own volition, executed and submitted a change of beneficiary form confirming Defendant as the beneficiary of the Policy. MetLife accepted and approved this designation.

Indeed, there is clear indication that Decedent intended not to inherit any of his assets to the Trust or Plaintiff. As part of their estate planning portfolio, Plaintiff and Decedent signed a Property Agreement dated June 20, 2007 before a notary, agreeing that "all life insurance policies insuring the life of Edward Lee Duggs are converted to, and characterized as the separate property of Edward." As further evidence of Decedent's intent, in November of 2012, Decedent expressed that he hoped that his divorce would be "finalized before I pass so that Georgina would not directly benefit from my social security or VA income," and further executed his last will and testament requesting "my wife be disinherited by me to the fullest extent permitted by law."

At all times relevant herein, the Decedent was of sound mind and capable of managing and organizing his personal and financial affairs. Dr. Nicole Shonka, who had been treating Decedent's brain tumor since 2011, executed a letter attesting to Decedent's competency to take care of his own affairs, himself and his children. Thus, Decedent's change of beneficiary was proper.

3.     **Legal Issues**

**PLAINTIFFS' RESPONSE:** Plaintiffs' claims are based on EBY's wrongdoing in arranging a unlawful, fraudulent and wrongful Life Settlement with Decedent for a Policy with death benefit coverage of $1.5 Million to EBY who, in return for a promise to pay to Decedent certain sums of money over time. EBY then changed the Policy beneficiary to himself to receive the full death benefit proceeds of the Policy upon Decedent's death.

The life settlement marketplace is heavily regulated by statute in California (where this Life Settlement took place) which must be strictly complied with to be valid. California Insurance Code sections 10113.1 through 10113.3 dictate how life settlements may be bought/sold in California, and apply to all life settlement transactions on or after July 2, 2010.

Here, the purported "sale" violated the law in numerous ways: the owner must sell the policy through a regulated "secondary market" where licensed agents are allowed to enter into such transactions under regulated circumstances. This Life Settlement was not processed through a valid "secondary market," and thus was improper and illegal.

Moreover, none of the necessary form filings under 10113.2(c) were submitted to the Department of Insurance; none of the necessary disclosures under 10113.2(d) were made at the time of sale; none of the broker disclosures required under 10113.2(f) were made to Decedent before or during the time of the execution of the Life Settlement; no broker was ever utilized or otherwise involved in the negotiation/sale/purchase of the Life Settlement as required under 10113.2(f); no written statement was ever obtained from a licensed attending physician that Decedent was of sound mind and under no constraint or undue influence to enter into the Life Settlement as required by 10113.3(a)(1)-(2); no document was created where Decedent consented to the release of his medical records to EBY, any settlement broker, or any insurance producer as required by 10113.3(a)(1)-(2); no witnessed document showing that Decedent consented to the Life Settlement was ever created or obtained as required by 10113.3(c); no written statement was made by the Decedent, as owner of the Policy, representing that he had a full and complete understanding of the Life Settlement as required by 10113.3(c); no statement was ever made by the Decedent acknowledging that he entered into the Life Settlement freely and voluntarily as required by 10113.3(c); no witnessed statement was ever created or obtained by the Decedent that he had a terminal condition at the time of the negotiation/execution of the Life Settlement as required by 10113.3(c); no statement was ever created or obtained by the Decedent that his terminal illness/condition was diagnosed after the Policy was issued as required by 10113.3(c); no written notice to the insurer that issued the Policy was made within 20 days of the Life Settlement that the Policy has become subject to a life settlement contract as required by 10113.3(g) nor was the notice accompanied by the disclosure documents required by 10113.2(d); at no time within 3 days after receipt of the documents to effect the transfer of the Policy did EBY or anyone else on behalf of EBY pay the proceeds of the Life Settlement to an escrow or trust account managed by a trustee or escrow agent in a state or federally chartered financial institution pending acknowledgment of the transfer by MetLife as required by 10113.3(j); and no statement was made in the attempted Life Settlement regarding the

1 | Decedent's right to rescind the Life Settlement as required by 10113.3(i).

2 | Furthermore, as alleged herein, EBY committed financial abuse of a dependent adult under Welfare & Institutions Code §§15600-15675 in that he knew that at the time of the sale Decedent was suffering from a severe mental illness/condition and was not competent to enter into this transaction, and was, thus, unduly influenced by EBY to enter into such.

Moreover, EBY also committed fraud by omitting and/or concealing from the Decedent material facts such as that Decedent must be of a sound mind to enter into the transaction, that certain forms and other disclosures were necessary under the Insurance Code, and that Decedent must be evaluated by a physician prior to entering into the Life Settlement.

EBY also breached his fiduciary duty to Decedent, the TRUST and GEORGINA by attempting to transact the Life Settlement to fraudulently acquire the death benefit proceeds of the Decedent's Policy away from the TRUST, the rightful beneficiary of the Policy, all while knowing Decedent's mental illness/condition and the severity, with the intent and purpose of deceiving Decedent, a trusting friend, to sell the $1.5 Million Policy for a mere $250,000, taking such proceeds away from the TRUST and depriving GEORGINA, ZANE and GEMMA (the beneficiaries of the TRUST) of such amounts.

Finally, EBY engaged in false and misleading advertising, solicitation, or practice per Insurance Code §10113.2 by soliciting the Life Settlement without a license from the Insurance Commissioner.

**DEFENDANT'S RESPONSE:** Plaintiffs' claims are barred by the simple fact that Plaintiffs have no legal standing to bring any of their claims against Defendant. Plaintiffs are not parties to the proposal agreement, are merely *former beneficiaries* of the Decedent's Life Insurance Policy with only a mere expectancy interest and thus have no standing to challenge the beneficiary designation. Instead, with the exception of the exceptions that may be afforded under the elder abuse provisions, only the "personal representative" of the Decedent's estate (now the Decedent's brother) possesses the statutory right to bring claims on behalf of the Decedent. Indeed, because the gravamen of Plaintiffs' entire claim is based upon the contention that Defendant fraudulently induced the Decedent to transfer the beneficial interest in the subject policy, only the Estate who would be the only party purportedly injured by such conduct may bring claims against Defendant. There is no "third party beneficiary" standing recognized in California for bringing claims based on tortious fraud.

Even assuming, *arguendo*, that Plaintiffs did have standing, their underlying claims must fail on the grounds that Defendant did not unduly influence the Decedent to part with the beneficial interest in his life insurance policy. The facts are abundantly clear that Decedent intended for Defendant to receive a considerable sum of the $1.5 million life insurance proceeds, $250,000 of which the Decedent intended for his children to receive. It is even more abundantly clear that the Decedent intended for Plaintiff not to inherit any of his assets. Thus, there can be no showing of the undue prejudice and/or elder abuse by any measure.

Moreover, Defendant maintains that the statutory provisions of California Insurance Code §10113.1 *et seq*. Indeed, these provisions were never intended to govern transactions such as the case at hand. In particular, California Insurance Code §10113.1(k)(2)(I) specifically provides that a "Life Settlement Contract" within the meaning of the Code does not include "any other contract, transaction, or arrangement from the definition of 'life settlement contract' that the commissioner determines is not of the type intended to be regulated by this act."

However, even if Plaintiffs do success in showing that Defendant violated the provisions under the relevant code sections, Plaintiffs are still not entitled to become the beneficiaries of the subject policy and therefore are not entitled to the life insurance proceeds. The Decedent made it abundantly clear that the life insurance policy is his own separate property, and that Plaintiff is not to inherit any of his assets. Thus, this Court must reform and/or order any and all documents that are necessary in order to ensure that the Decedent's intent and understanding are carried out.

**4.     Motions**

There are no pending motions filed by Plaintiffs. Plaintiffs filed a Motion for a TRO/Preliminary Injunction on August 22, 2014. (Dkt. #6). The Motion was denied on October 8, 2014. (Dkt. #26). Plaintiffs anticipate filing motions for partial summary judgment and/or summary judgment on the issue of its claims. Defendant's Rule 12(b)(6) Motion to Dismiss is now pending with this Court, with a scheduled hearing date set for November 13, 2014.

**5.     Amendment of Pleadings**

To the best of the parties' knowledge, the parties do not anticipate amending the pleadings to add or dismiss parties, claims, or defenses. However, Defendant intends to file cross-claims and/or

JOINT CASE MANAGEMENT STATEMENT – 7
*Duggs, et al. v. Eby*- No. 3:14-cv-03734-RS 7

counter-claims for purposes of seeking various forms of relief to ensure that the Decedent's wishes and intent are carried out (i.e. reformation, declaratory relief, etc.).  Defendant will be doing so pending a ruling on his Rule 12(b)(6) Motion to Dismiss.  Notwithstanding the foregoing, each party reserves its/their respective rights to seek leave to amend its/their respective pleadings should such party deem the seeking of an amendment or counterclaim appropriate.

**6.    Evidence Preservation**

The parties have reviewed the ESI Guidelines.  The parties met and conferred pursuant to FRCP Rule 26(f) on November 3, 2014 regarding preservation of evidence.  The parties do not anticipate significant cost or burden regarding the discovery of electronically stored information.

The parties are taking all required steps to preserve evidence relevant to the issues reasonably evident in this action.  Attorneys for Plaintiffs and attorneys for Defendants have discussed with their clients the need to diligently and effectively preserve all such evidence.

**7.    Disclosures**

The parties will comply with the initial disclosure requirements of FRCP Rule 26 on or before November 13, 2014.

**8.    Discovery**

The parties have engaged in no discovery to date.

Initial Disclosures:  The initial disclosures required by the FRCP Rule 26(a)(1) of Plaintiffs and Defendant shall be made on or before November 13, 2014.

Subject/Scope of Discovery:  Discovery will be related to claims brought, fees and costs.

Privileged Documents:  The parties agree that any documents production in which documents are withheld on grounds of privilege will be accompanied by a privilege log no later than 14 days after its disclosures or discovery responses are due unless the parties stipulates to, or the Court sets, another date.  The privilege log will provide: 1) the title and description of the document, including Bates-number range; 2) the subject matter addressed in the document; 3) the identity and position of the author; 4) the identity and position of all recipients; 5) the dates the document was prepared, sent and shared; 6) the identity and position of all addressees and recipients of the communication; (7) the document's present location; (8) the specific privilege and a brief summary of any supporting facts; and

(9) the steps taken to ensure the confidentiality of the communication, including an affirmation that no unauthorized persons received the communication.

<u>Electronic Information</u>: Electronically stored information may be produced by CD or paper copy. Regardless of the method of production, no alterations shall be made to the electronic information, except redaction of information withheld under a claim of privilege that is noted in an accompanying privilege log.

**9. Class Actions**

This lawsuit is not a class action.

**10. Related Cases**

No related case or proceeding is pending before another judge of this court, or before another court or administrative body.

**11. Relief**

Plaintiffs seek, *inter alia*, to set aside and void the "sale" of the Policy, to rescind the transaction and to recover the proceeds of the Policy to the TRUST, the rightful beneficiary of the Policy, so that the proceeds may go to GEORGINA, ZANE and GEMMA, who are the TRUST beneficiaries, as alleged herein. Plaintiffs also seek a constructive trust over the Policy proceeds fraudulently and illegally received by EBY for the benefit of the TRUST, the rightful beneficiary of the Policy.

**12. Settlement and ADR**

Both parties are agreeable to Early Neutral Evaluation or Mediation (or both). Alternatively, the parties are also open to the utilization of private mediation. The parties seek an ADR cut-off date at least 30 days before trial but no earlier than March 1, 2015.

**13. Consent to Magistrate Judge For All Purposes**

This matter was initially assigned to a magistrate judge: the Honorable Maria-Elena James. Since that time and as a result of Plaintiffs' Motion for a Preliminary Injunction, the Court reassigned the matter to a district court judge: the Honorable Richard Seeborg on August 25, 2014 (Dkt. #8).

**14. Other References**

The parties do not believe this matter is suitable for reference to binding arbitration, a special master, or the Judicial Panel or Multidistrict Litigation.

JOINT CASE MANAGEMENT STATEMENT – 9
*Duggs, et al. v. Eby*- No. 3:14-cv-03734-RS 9

1  **15.**  **Narrowing of Issues**

2  At the present time, neither party believes there are any issues that can be narrowed by
3  agreement or by motion.  The parties may stipulate to the facts to expedite the court's ruling on the
4  primary legal issues.  Neither party requests bifurcation of issues, claims, or defenses.

5  **16.**  **Expedited Trial Procedure**

6  The parties do not believe this matter is suitable for an Expedited Trial Procedure.

7  **17.**  **Scheduling**

8  Discovery Cut-off:  July 20, 2015

9  Exchange of Expert Reports:  July 20, 2015

10  Exchange of Rebuttal Reports: July 31, 2015

11  Expert Discovery Cut-Off:  September 1, 2015

12  Deadline for Filing of Dispositive Motions:  September 3, 2015

13  Last Day for Discovery Motions to be Heard:  October 1, 2015

14  Pretrial Conference:  October 22, 2015

15  Trial:  November 30, 2015

16  **18.**  **Trial**

17  **PLAINTIFFS' RESPONSE:**  Plaintiffs demanded a jury trial on August 18, 2014 (Dkt. #1),
18  believing issues of fact exist in this case.  The trial is expected to last five (5) days.

19  **DEFENDANT'S RESPONSE:**  At this time, Defendant seeks a trial of issues of fact by his
20  peers.

21

22  Dated: November 6, 2014        KORNBLUM, COCHRAN, ERICKSON & HARBISON, LLP
23                                 /s/ Nicholas J. Peterson_____
                                   Nicholas J. Peterson, #287902
24                                 Attorneys for Plaintiffs GEORGINA R. DUGGS, Individually
                                   and Trustee of the EDWARD & GEORGINA DUGGS LIVING
25                                 TRUST; ZANE DUGGS and GEMMA DUGGS (minors)

26

27  Dated: November 6, 2014        BEITCHMAN & ZEKIAN, P.C.
                                   /s/ Andre Boniadi_____
28                                 Andre Boniadi,
                                   Attorneys for Defendant JAMES EARL EBY